IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RA' SHEEN J. BROWN,<br>    Plaintiff, | :<br>:<br>: |
| v. | :   CIVIL ACTION NO. 24-CV-1019 |
| CITY OF PHILADELPHIA, *et al.*,<br>    Defendants. | :<br>:<br>: |

**MEMORANDUM**

**BAYLSON, J.**                                                                                                                                 **APRIL 17, 2024**

      Ra' Sheen J. Brown, an inmate currently confined at SCI Frackville, has filed a *pro se* Complaint asserting various civil rights violations in connection with a state court criminal prosecution. As set forth more fully below, Brown's claims against the named Defendants in their individual capacities will be dismissed based on absolute prosecutorial immunity. All claims based on violations of the Pennsylvania constitution and state tort law also will be dismissed. The Court will permit Brown to proceed on his *Monell* claim against the City of Philadelphia and his official capacity claim against former District Attorney Seth Williams, but will dismiss the official capacity claims against the Assistant District Attorneys.

**I.**     **FACTUAL ALLEGATIONS**[1]

      Brown's claims arise out of a state court criminal prosecution for which the conviction and sentence were subsequently vacated.[2] He names the following Defendants in their

---

[1] The allegations set forth in this Memorandum are taken from Brown's Complaint. The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

[2] The publicly available state court docket, of which this Court may take judicial notice, *see Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006), reflects that a new trial on the charges was ordered and is currently scheduled to commence on August 5, 2024. *See Commonwealth v. Brown*, CP-51-CR-0002569-2012 (C.P. Phila.).

individual and official capacities:  (1) the City of Philadelphia; (2) former Philadelphia District Attorney Seth Williams; (3) John or Jane Doe #1, a supervisor in the District Attorney's Office for the City of Philadelphia; (4), Assistant District Attorney Carolyn Naylor; (5) John or Jane Doe #2, a supervisor in the Appeals Unit of the District Attorney's Office for the City of Philadelphia; and (6) Assistant District Attorney Hugh Burns, Appeals Unit.  (Compl. at 7-9.)

Brown was arrested and charged with murder, conspiracy to commit murder, possession of a firearm by a prohibited person, carrying a firearm on a public street, and possession of an instrument of crime, in connection with a shooting that occurred on October 17, 2011 in Philadelphia.  (*Id.* at 9-10; *Commonwealth v. Brown*, CP-51-CR-0002569-2012 (C.P. Phila.).)  Brown was held for trial based on the statement of a witness, who recanted the statement at the preliminary hearing, alleging that it was the product of physical and psychological violence by Detective James Pitts.  (Compl. at 10.)  Although Brown moved for discovery of the personnel files of two of the detectives involved in his case to determine whether there had been any allegations of misconduct, no discovery was turned over by District Attorney Naylor.  (*Id.*)  Two witnesses who were called at trial disavowed their out of court statements that implicated Brown in the shooting.  (*Id.* at 11.)  The first testified that Detective Pitts physically and psychologically intimidated him into making the statement, and the second testified that she was pressured by Detective Ronald Dove when giving her statement and she was under the influence of alcohol when she gave the statement.  (*Id.*)  The witness statements were introduced at trial by Assistant District Attorney Naylor through the detectives.  (*Id.*)  A separate witness testified on behalf of Brown, stating that he observed an individual other than Brown shoot the victim.  (*Id.*)  According to Brown, the "trial was ultimately a credibility contest between the witnesses and detectives with Ms. Naylor arguing that the detectives were sworn officers of the law with no

2

reason to lie." (*Id.*)  Brown was found guilty of all charges and sentenced to life imprisonment on June 26, 2013.  (*Id.*)

During Brown's appeal, which was defended against by Assistant District Attorney Hugh Burns, it was reported in the news that Detective Pitts was found to have fabricated evidence in three other cases, and Detective Dove was under investigation "in the cover up of three homicides and a disappearance." (*Id.* at 11-12.)  Pitts and Dove were each dismissed from employment with the Philadelphia Police Department and were prosecuted for their actions in other criminal investigations and trials.  (*Id.* at 12-13.)

Brown was initially unsuccessful in his attempts to overturn his conviction on direct appeal and through post-conviction proceedings.  (*Id.* at 12.)  He later filed a habeas petition and a successive petition under the Post Conviction Relief Act ("PCRA").  (*Id.*)  During the course of his second PCRA proceeding, the Commonwealth sent Brown "over three (300) hundred pages of disclosure material that was never turned over previously," which included three sustained findings of misconduct against Pitts and one sustained finding of misconduct against Dove.  (*Id.* at 13.)  Brown asserted *Brady* violations on September 21, 2022, based on information discovered in another case involving Detective Pitts.  (*Id.*)  According to Brown, as part of an investigation into the other case, "the Conviction Integrity Unit discovered that the District Attorney's Office had a general policy of not obtaining or disclosing such records" and advised counsel to subpoena the records to find the *Brady* material, thereby "putting the onus on the defense counsel to find *Brady* material." (*Id.*)[3]  Brown contends that the investigation into at least two of the misconducts occurred and concluded prior to his own trial.  (*See id.* at 18.)

---

[3] Brown alleges that the misconducts were initially detailed in a Joint Stipulation of Fact filed by the Commonwealth and the defendant in an unrelated case, *Commonwealth v. Onyiah*, No. CP-51-CR-00001632-2011 (C.P. Phila.).

3

Brown further asserts that the Commonwealth acknowledged that it "had suppressed exculpatory and impeachment evidence regarding Pitts and Dove, critical witnesses for the Commonwealth at [Brown's] trial on the merits, the Commonwealth conceded to vacate [his] conviction on March 29, 2023" and the sentencing judge vacated the judgment of sentence on May 5, 2023. (*Id.*)

Brown asserts various constitutional claims, as well as state law claims based on Defendants' actions.[4] (*Id.* at 19.) He seeks declaratory relief and monetary damages. (*Id.* at 20.)[5]

---

[4] Brown lists various constitutional amendments and legal theories as the basis for his claims. However, passing references to various legal precepts, without further development, are not sufficient to raise claims under such principles. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018). Thus, the Court construes the Complaint as raising only the claims discussed in detail below. In any event, to the extent Brown invokes other legal provisions, for instance, § 1985 and § 1986, he has not stated a plausible basis for a claim under those provisions. "[T]o state a claim under 42 U.S.C. § 1985(3), a plaintiff must allege (1) a conspiracy; (2) motivated by a racial or class based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons to the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States." *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997); *Farber v. City of Paterson*, 440 F.3d 131, 136 (3d Cir. 2006) (explaining that "§ 1985(3) defendants must have allegedly conspired against a group that has an identifiable existence independent of the fact that its members are victims of the defendants' tortious conduct"). "[T]o properly plead an unconstitutional conspiracy, a plaintiff must assert facts from which a conspiratorial agreement can be inferred." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 178 (3d Cir. 2010). "[A] bare assertion of conspiracy will not suffice." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "[Section] 1986 constitutes an additional safeguard for those rights protected under 42 U.S.C. § 1985, and 'transgressions of § 1986 by definition depend on a preexisting violation of § 1985." *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994) (quoting *Rogin v. Bensalem Twp.*, 616 F.2d 680, 696 (3d Cir. 1980)). Thus, "to maintain a cause of action under § 1986, the plaintiffs must show the existence of a § 1985 conspiracy." *Id.* at 1295 n.5.

[5] Declaratory judgments are unavailable to litigants who seek a proclamation that their rights were violated in the past, as Brown requests here. *See Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006) (*per curiam*) ("Declaratory judgment is inappropriate solely to adjudicate past

4

## II.     STANDARD OF REVIEW

Although Brown has paid the filing fee in full, (*see* ECF No. 4), the Court has the authority to screen the Complaint pursuant to 28 U.S.C. § 1915A.  *See Shane v. Fauver*, 213 F.3d 113, 116 n.2 (3d Cir. 2000) (recognizing that the district courts have the authority to screen a prisoner complaint pursuant to § 1915A(b)(1) even if the prisoner is not proceeding *in forma pauperis*).  Section 1915A requires that the Court "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).  In doing so, the Court must dismiss a complaint or any portion thereof that "is frivolous, malicious, or fails to state a claim upon which relief may be granted," *id*. § 1915A(b)(1), or that "seeks monetary relief from a defendant who is immune from such relief," *id*. § 1915A(b)(2).

Whether a complaint fails to state a claim under § 1915A(b)(1) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).  *See Harris v. Wetzel*, 822 F. App'x 128, 130 (3d Cir. 2020) (*per curiam*); *see also Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).  Accordingly, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  "'At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the pro se] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only

---

conduct" and is also not "meant simply to proclaim that one party is liable to another."); *see also Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 83 (3d Cir. 2014) (*per curiam*) ("Declaratory judgments are meant to define the legal rights and obligations of the parties in the anticipation of some future conduct.").  Accordingly, declaratory relief is not available here.  The Court addresses Brown's remaining claims for damages below.

5

whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Brown is proceeding *pro se*, the Court construes the allegations in the Complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 245). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* However, "'*pro se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.*

### III.  DISCUSSION

#### A.  Section 1983 Claims

Brown raises claims under 42 U.S.C. § 1983, the vehicle by which federal constitutional claims may be brought in federal court. Section 1983 "does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996); *Pappas v. City of Lebanon*, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) ("Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors.") (citing *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002)). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

### 1.     **Individual Capacity Claims**

Brown's claims against the Defendants in their individual capacities are based on their actions taken during the prosecution of Brown's state criminal case. Specifically, he claims that Seth Williams acted as final policymaker and supervisor for the District Attorney's Office, including the decision of what material was to be provided to criminal defendants. (Compl. at 19.) He further alleges that the actions of John or Jane Doe #1 were taken in his or her role as supervisor for the District Attorney's Office and he or she was legally responsible for the actions of his or her subordinates during his or her shift. (*Id.*) Additionally, Brown contends that Carolyn Naylor acted in her role as Assistant District Attorney and she prosecuted cases in accordance with the policy of the District Attorney's Office. (*Id.* at 20.) He further claims that the actions of John or Jane Doe #2 were taken in his or her role as supervisor for the Appeals Unit in the District Attorney's Office and he or she was legally responsible for the actions of his or her subordinates during his or her shift. (*Id.*) Brown also alleges that the actions of Hugh Burns were undertaken in his role as Assistant District Attorney in the Appeals Unit for the District Attorney's Office and he prosecuted cases on appeal in accordance with policy of the District Attorney's Office. (*Id.*)

It is well settled that prosecutors are entitled to absolute immunity from liability for damages under § 1983 for acts that are "intimately associated with the judicial phase of the criminal process" such as "initiating a prosecution and . . . presenting the State's case." *Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). "[W]hether a prosecutor is entitled to absolute immunity depends on whether she establishes that she was functioning as the state's 'advocate' while engaging in the alleged conduct that gives rise to the constitutional violation." *Yarris v. Cty. of Delaware*, 465 F.3d 129, 136 (3d Cir. 2006). Absolute immunity extends to the decision

to initiate a prosecution, including "soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings," presenting a state's case at trial, and appearing before a judge to present evidence. *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (internal citations omitted). "[P]rosecutors [also] are entitled to absolute immunity from claims for damages related to their roles in choosing when and whether to dismiss charges or withdrawal [sic] an arrest warrant lodged against a defendant." *Garcia v. Philadelphia Dist. Attorney's Off.*, No. 23-1224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023), *cert. denied*, No. 23-6327, 2024 WL 675086 (U.S. Feb. 20, 2024), (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991) (extending absolute immunity to protect those functions in which the prosecutor acts as an "advocate for the State," even if they "involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom")). After a conviction is obtained, a prosecutor's conduct is entitled to absolute immunity where the conduct is "part of the prosecutor's continuing personal involvement as the state's advocate in adversarial post-conviction proceedings." *Yarris*, 465 F.3d at 137. "[P]rosecutors are [also] entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity." *Id.*; *see also Munchinski v. Solomon*, 747 F. App'x 52, 58 (3d Cir. 2018) ("[T]he prosecutor is entitled to absolute immunity from suit - even when he intentionally withholds evidence that is exculpatory under *Brady*" because "'accurately determining guilt or innocence requires that both the prosecution and the defense have wide discretion in the conduct of the trial and the presentation of evidence'" (citing *Imbler*, 242 U.S. at 426)). Moreover, District Attorneys and other supervisory prosecutors are likewise entitled to absolute immunity from claims based on their role in pursuing a prosecution on behalf of the Commonwealth. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 348-49 (2009).

Because Brown's claims against each of the named individual Defendants are clearly based upon their actions as prosecutors representing the Commonwealth in the judicial phase of his state criminal proceedings, each is entitled to absolute immunity. The claims against Defendants Williams, Naylor, Burns, as well as the John and Jane Does, in their individual capacities will be dismissed with prejudice.

### 2.      Official Capacity Claims and Claims Against the City of Philadelphia

Brown alleges that prior to trial, he moved for discovery of, *inter alia*, the personnel files of Detectives Pitts and Dove to ascertain whether there were any allegations of misconduct against them, but no discovery with respect to Pitts and Dove was turned over by ADA Naylor. (Compl. at 10.) During the pendency of Brown's appeal, it was reported in the media that Pitts had been found to have fabricated evidence in three cases and that Dove was under investigation; Brown then requested a hearing based on after-discovered evidence on January 6, 2015. (*Id.* at 11-12.) Brown raised a *Brady* violation in his successive PCRA petition in September 2019, and during an evidentiary hearing on June 17, 2022 on the successive PCRA petition. (*Id.* at 12-13.)

On August 21, 2022, Brown received 300 pages of discovery material that had not been previously disclosed to him, including three sustained misconduct findings with respect to Pitts, and one sustained misconduct finding with respect to Dove. (*Id.* at 13.) These misconducts were detailed in the Joint Stipulation in the *Onyiah* case. (*Id.*) Two of the misconduct investigations were completed prior to Brown's trial, while a third investigation was concluded during the pendency of Brown's appeal. (*Id.* at 18.) Brown alleges that the Commonwealth acknowledged that it "had suppressed exculpatory and impeachment evidence regarding Pitts and Dove, critical witnesses for the Commonwealth" at his trial and vacated his conviction on March 29, 2023. (*Id.*) The judgment of sentence was vacated on May 5, 2023. (*Id.*)

Brown claims that Defendants' conduct deprived him of his constitutional rights during his prosecution, including, *e.g., inter alia,* the right to a fair trial, due process, cross examination, and compulsory process. (*Id.* at 19.) He asserts that the actions of the individual Defendants were taken pursuant to the practices and policies of the City of Philadelphia "to prosecute individuals without due process and to deny a fair trial as evidence[d] by the policy of the District Attorney's Office." (*Id.*) He further avers that the actions of the individual Defendants were caused by the failure of the City, "with deliberate indifference, to properly train, control or supervise the individual defendants with respect to their powers under the Constitution and laws of the United States." (*Id.*)

From his allegations, it appears that Brown seeks to pursue claims for municipal liability pursuant to *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Local governments and municipalities are considered persons under § 1983. *Monell*, 436 U.S. at 690. However, municipal liability cannot be predicated on a *respondeat superior* basis, meaning that municipalities may not be held liable simply because their employees committed a constitutional violation. *Id.* at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) (emphasis in original)). There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City*

*of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). "A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." *Estate of Roman*, 914 F.3d at 798 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. *Id.*

If the alleged policy or custom at issue is a failure to train or supervise, the plaintiff must show that this failure "amounts to deliberate indifference to the rights of persons with whom the . . . employees will come into contact." *Johnson v. City of Philadelphia*, 975 F.3d 394, 403 (3d Cir. 2020) (citations and internal quotation omitted). "The failure to train an employee must be a choice on the part of the supervisor or supervising entity knowing that the training that is (or is not) being provided is not sufficient for the employees and the choices they encounter on the job." *Curran v. Venango Cnty.*, No. 23-0019, 2023 WL 8439274, at *9 (W.D. Pa. Nov. 2, 2023) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388-90 (1989)), *report and recommendation adopted*, No. 23-19, 2023 WL 8061513 (W.D. Pa. Nov. 21, 2023). "A plaintiff claiming a failure to train must allege a pattern of similar constitutional violations by untrained employees that puts . . . decisionmakers on notice that a new program is necessary." *Johnson*,

975 F.3d at 403 (citations and quotations omitted). "Otherwise, the plaintiff needs to show that failure to provide the identified training would likely result in the violation of constitutional rights - *i.e.,* to show that the need for more or different training was so obvious." *Id.* (quotations and citations omitted).

A claim against a government employee named in his official capacity is indistinguishable from a claim against the governmental entity that employs the defendant. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell*, 436 U.S. at 690 n.55). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, to state a § 1983 claim against a public entity's employees acting in an official capacity, a complaint must allege that a constitutional deprivation was caused by an official policy or informally adopted custom. *Garcia*, 2023 WL 3750604, at *2 (internal citations omitted).

Here, Brown brings claims against the City, as well as claims against Defendant Williams and the individual ADAs in their official capacities. Brown's claims against the Assistant District Attorneys in their official capacities will be dismissed because they do not have policymaking authority. *See DeSousa v. City of Philadelphia*, No. 11-3237, 2012 WL 6021319, at *2 (E.D. Pa. Dec. 4, 2012) (dismissing official capacity claims against Assistant District Attorney because "under Pennsylvania law, assistant district attorneys do not possess policymaking authority for the District Attorney's Office") (citing *Patterson v. City of Phila.*, No. 08-2140, 2009 WL 1259968, at *10 (E.D. Pa. May 1, 2009); *Payson v. Ryan*, No. 90-1873, 1992 WL 111341, at *11 (E.D. Pa. May 14, 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992)); *see also Bey v. Sierra Streets*, No. 21-0685, 2021 WL 735724, at *2 (E.D. Pa. Feb. 25, 2021) (official

capacity claim against Assistant District Attorney is essentially a claim against the Philadelphia District Attorney's Office for which the plaintiff must identify a custom or policy, and specify what exactly that custom or policy was to satisfy the pleading standard).

This leaves Brown's *Monell* claim against the City, and official capacity claim against former District Attorney Williams.  Brown identifies a specific policy of the City and District Attorney's Office — to refrain from obtaining and disclosing Internal Affairs investigation reports concerning police misconduct, and instead to notify defense counsel that they should subpoena the records themselves.  Brown asserted a *Brady* violation on the basis that exculpatory evidence was withheld from him as a result of this policy, and his conviction and sentence were vacated.  Thus, Brown has pled an affirmative link between the alleged policy and the alleged constitutional violation.  At this stage, the Court will allow Brown's *Monell* claims against the City and former District Attorney Williams in his official capacity to proceed past statutory screening.  *See Poteat v. Lydon*, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023), *cert. denied*, No. 23-6683, 2024 WL 1348921 (U.S. Apr. 1, 2024) (noting that the Lehigh County District Attorney's Office might have been subject to liability for § 1983 claims if its official policy or custom caused Poteat's deprivation of rights) (citing *Monell*, 436 U.S. at 694-95; *City of Canton*, 489 U.S. at 385).

    **B.**    **State Law Claims**

Brown seeks to assert claims based on the Pennsylvania constitution and state tort law against the individual Defendants.  (*See* Compl. at 19-20.)  This he may not do.  First, Brown may not proceed on any claims for damages based on the Pennsylvania constitution. "Pennsylvania does not have a statutory equivalent to § 1983 and does not recognize a private right of action for damages stemming from alleged violation of the state constitution." *Miles v.*

*Zech*, 788 F. App'x 164, 167 (3d Cir. 2019) (*per curiam*); *see also Plouffe v. Cevallos*, 777 F. App'x 594, 601 (3d Cir. 2019) ("[N]or is there a private right of action for damages under the Pennsylvania Constitution"); *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, 442 F. App'x 681, 687 (3d Cir. 2011) ("No Pennsylvania statute establishes, and no Pennsylvania court has recognized, a private cause of action for damages under the Pennsylvania Constitution.").

Second, to the extent Brown seeks to assert claims against the individual Defendants under state tort law, such claims will be dismissed. In Pennsylvania, common law tort immunity protects "high public officials," including district attorneys and assistant district attorneys, from suit when acting in the scope of their official duties and authority, as the individual Defendants were in pursuing Brown's prosecution. *See Poteat*, 2023 WL 6620368, at *3 (citing *Heller v. Fulare*, 454 F.3d 174, 177 (3d Cir. 2006); *Durham v. McElynn*, 772 A.2d 68, 69-70 (Pa. 2001)); *see also Johnson v. City of Reading*, No. 21-4860, 2023 WL 1783775, at *16 (E.D. Pa. Feb. 6, 2023) ("The standard used to determine who qualifies as a 'high public official' under Pennsylvania common law (1) depends on the nature of their duties, (2) the importance of their office, and (3) whether the role has policy-making functions. The Pennsylvania Supreme Court has held that District Attorneys and Assistant District Attorneys qualify as a high official for purposes of immunity.") (internal citations omitted); *Wilson v. City of Philadelphia*, No. 21-2057, 2023 WL 5186258, at *8 (E.D. Pa. Aug. 11, 2023) (because Court had determined that ADA, and by extension, DA, were participating in "prosecutorial" activity that was absolutely protected, this necessarily meant that they were operating within the scope of their official duties and powers, and were immune from plaintiff's claims for civil damages based on state law tort claims of malicious prosecution and reckless or intentional infliction of emotional distress). As

discussed above, the facts alleged show that the individual Defendants acted within their prosecutorial roles. Accordingly, any claims based on violations of the Pennsylvania constitution and state tort law will be dismissed for failure to state a claim.

## IV.  CONCLUSION

For the foregoing reasons, Brown's claims against the Defendants in their individual capacities will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim based on absolute prosecutorial immunity. Moreover, any claims based on violations of the Pennsylvania constitution and state tort law will be dismissed with prejudice pursuant to 28 U.S.C. § 1915A(b)(1) for failure to state a claim. Brown's *Monell* claims against the City and former District Attorney Williams in his official capacity will be allowed to proceed; however, the Court will dismiss the official capacity claims against the Assistant District Attorneys.

An appropriate Order follows.

BY THE COURT:

s/ Michael M. Baylson

**MICHAEL M. BAYLSON, J.**