IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RA' SHEEN J. BROWN,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 24-CV-1019 |
| CITY OF PHILADELPHIA, *et al.*,<br>    Defendants. | :<br>:<br>: |

**MEMORANDUM**

**BAYLSON, J.**                                                                                                   **JULY  24, 2025**

*Pro se* Plaintiff Ra' Sheen J. Brown commenced this action asserting his civil rights were violated in a state court criminal prosecution.  After a jury trial, Brown was found guilty of all charges including first-degree murder and sentenced to life imprisonment on June 26, 2013.  See Commonwealth v. Brown, CP-51-CR-0002569-2012 (C.P. Phila.).[1]  That conviction and sentence were subsequently vacated after the Commonwealth conceded relief in proceedings under the Post Conviction Relief Act ("PCRA").

The Court has already dismissed several parties pursuant to statutory screening.  The remaining parties, the City of Philadelphia (the "City") and former District Attorney Williams in his official capacity (the "DAO"), both moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF Nos. 59, 62.)  For the following reasons, both Motions will be **DENIED**.

---

[1] The Court may take judicial notice of facts reflected in publicly available state court records.  See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  The Court adopts the sequential pagination supplied to the parties' papers by the CM/ECF docketing system.

I.  **RELEVANT FACTUAL ALLEGATIONS**

The events giving rise to this case, as alleged by Plaintiff in the Complaint, are as follows.

Brown was arrested and charged with murder, conspiracy to commit murder, possession of a firearm by a prohibited person, carrying a firearm on a public street, and possession of an instrument of crime, in connection with a shooting that occurred on October 17, 2011 in Philadelphia. (Compl. at 9-10; Commonwealth v. Brown, CP-51-CR-0002569-2012 (C.P. Phila.).) Brown was held for trial based on the statement of a witness, who recanted the statement at the preliminary hearing, alleging that it was the product of physical and psychological violence by Detective James Pitts. (Compl. at 10.) Although Brown moved for discovery of the personnel files of Pitts and the other detective involved in his case, Detective Ronald Dove, to determine whether they had been the subjects of any allegations of misconduct, no such discovery was allegedly turned over by the Assistant District Attorney. (Id.)

Two witnesses who were called at trial disavowed their out of court statements that implicated Brown in the shooting. (Id. at 11.) The first testified that Detective Pitts physically and psychologically intimidated him into making the statement, and the second testified that she was pressured by Detective Dove when giving her statement and was under the influence of alcohol at the time. (Id.) The witness statements were introduced at trial through the detectives, who disavowed the witnesses' allegations against them. (Id.) A separate witness testified on behalf of Brown, stating that he observed an individual other than Brown shoot the victim. (Id.) Brown was found guilty and sentenced to life imprisonment. (Id.)

During Brown's appeal, a newspaper allegedly reported that Detective Pitts was found to have fabricated evidence in three other cases, and Detective Dove was under investigation "in the cover up of three homicides and a disappearance." (Id. at 11-12.) Pitts and Dove were each

2

dismissed from employment with the Philadelphia Police Department and were prosecuted for their actions in other criminal investigations and trials. (Id. at 12-13.)

Brown was initially unsuccessful in his attempts to overturn his conviction on direct appeal and through post-conviction proceedings. (Id. at 12.) He later filed a federal habeas petition and a successive PCRA petition. (Id.) During his successive PCRA proceeding, the Commonwealth sent Brown "over three (300) hundred pages of disclosure material that was never turned over previously," which included three sustained findings of misconduct against Pitts and one sustained finding of misconduct against Dove. (Id. at 13.) Brown "promptly" asserted Brady violations based on that material as well as information discovered in another case involving Detective Pitts. (Id.) Brown alleges that, as part of an investigation into the other case, "the Conviction Integrity Unit discovered that the District Attorney's Office had a general policy of not obtaining or disclosing such records" and, rather, advised counsel to subpoena the records themselves, thereby "putting the onus on the defense counsel to find Brady material." (Id.) Brown alleges that the misconducts were initially detailed in a Joint Stipulation of Fact filed by the Commonwealth and the defendant in an unrelated case, Commonwealth v. Onyiah, No. CP-51-CR-00001632-2011 (C.P. Phila.).[2]

Brown alleges that the investigation into at least two of the misconducts occurred and concluded prior to his own trial. (See Compl. at 18.) He further alleges that the Commonwealth acknowledged that it "had suppressed exculpatory and impeachment evidence regarding Pitts and Dove, critical witnesses for the Commonwealth at [Brown's] trial on the merits," and "conceded

---

[2] The Joint Stipulation of Fact is attached to Brown's response to the Motion to Stay. (See ECF No. 50, Exh. B.)

to vacate [his] conviction," which resulted in the sentencing judge vacating the judgment of sentence on May 5, 2023. (Id.) Based on these allegations, Brown seeks monetary damages.[3]

## II. PROCEDURAL HISTORY

Brown filed a Complaint on March 4, 2024, alleging claims against the City of Philadelphia, former Philadelphia District Attorney Seth Williams in his individual and official capacities, and various assistant district attorneys. (ECF 1.) At the time he filed his Complaint, Brown remained in custody and was awaiting retrial.

By Memorandum and Order dated April 17, 2024, several of Brown's claims were dismissed upon statutory screening pursuant to 28 U.S.C. § 1915A(b)(1), including all individual capacity claims against the prosecutors, official capacity claims against the Assistant District Attorneys, and state law claims. (See ECF Nos. 6 and 7.) The Court ordered the case to proceed to service only on Brown's Monell claims against the City and former District Attorney Williams in his official capacity (the "DAO").[4] (See id.)

---

[3] The Court previously dismissed Brown's request for declaratory relief. (*See* ECF No. 6.)

[4] Brown's claims against Defendant Seth Williams in his official capacity are essentially the same as claims against Williams's former employer, the Philadelphia District Attorney's Office ("DAO"). See Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). Accordingly, for clarity and ease of reference, the Court will at times refer to the DAO, rather than to Williams in his official capacity, in assessing the validity of Brown's claims. As the DAO notes in its motion, District Attorney Seth Williams is no longer in office and his successor was not named as a Defendant. (See ECF No. 62-1 at 10-11 n.2.) Consistent with Rule 25(d), the Court will order District Attorney Lawrence S. Krasner, in his official capacity, to be substituted as a party. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution.").

4

In October 2024, the Court stayed this case pending resolution of Brown's underlying criminal case. (ECF No. 51.) By Order dated April 15, 2025, the Court lifted the stay because the state court criminal proceedings concluded as the result of a negotiated plea. (See ECF Nos. 56, 57, 58.) Brown was resentenced and released from custody because his sentence was completed. See Commonwealth v. Brown, CP-51-CR-0002569-2012 (C.P. Phila.).

Both the DAO and the City moved to dismiss the Complaint for failure to state a claim. (ECF Nos. 59 (the City) and 62 (the DAO)). Brown responded to the City's Motion on April 30, 2025, ECF No. 63, and to the DAO's Motion on May 12, 2025, ECF No. 66. The City filed a reply on May 14, 2025. (ECF No. 68.).

### III.   STANDARD OF REVIEW

To survive a motion to dismiss under Federal Rule 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Court accepts all facts alleged in Plaintiff's Complaint as true and in determining whether Plaintiff has stated a plausible claim, draws all reasonable inferences in Plaintiff's favor. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir. 2008). While the Court "construe[s] ... *pro se* filings liberally[,]" Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021), "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). That is, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 245 (3d Cir. 2013).

### IV.   DISCUSSION

The crux of Brown's Complaint is that prosecutors in his criminal trial allegedly violated his constitutional rights by withholding Brady material relevant to the credibility of Detectives

5

Pitts and Dove, pursuant to a DAO policy requiring prosecutors to direct defense counsel seeking discovery about police misconduct to subpoena the records themselves, rather than having prosecutors obtain and disclose those records. (See Compl. at 13 (describing DAO policy to advise defense counsel to subpoena records pertaining to police misconduct rather than to obtain and disclose such files); Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, ECF No. 66 at 2 ("The Plaintiff's claim is grounded in the allegation that the District Attorney's Office implemented and enforced an office-wide disclosure policy that violated obligations under Brady[].").)[5] He further avers that the actions of the prosecutors in his case were caused by the failure of the City and/or DAO "with deliberate indifference, to properly train, control or supervise the individual [prosecutors] with respect to their powers under the Constitution and laws of the United States." (Compl. at 19; Pl's Opp'n to Def.'s Mot. to Dismiss, ECF No. 63 at 3, 5.) Brown brings his constitutional claims pursuant to 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### A.    Municipal Liability Under § 1983

While States, or officials of the State acting in an official capacity, are not considered "persons" for purposes of § 1983, Will v. Mich. Department of State Police, 491 U.S. 58, 64–66 (1989) and not subject to liability under § 1983, local governments and municipalities are. Monell, 436 U.S. at 690. Municipal liability, however, cannot be predicated on *respondeat superior*,

---

[5] When evaluating a motion to dismiss, a court may look to "allegations contained in the other court filings of a *pro se* plaintiff" to clarify statements made in the complaint. Swofford v. Mandrell, 969 F.2d 547, 549 (7th Cir. 1992) (citing, *inter alia*, Hughes v. Rowe, 449 U.S. 5, 10 (1980)); see also Rivera v. Little, No. 23-4217, 2024 WL 3511619, at *1-2 & nn. 2-4 (E.D. Pa. July 23, 2024) (noting clarifications made by *pro se* plaintiff in response to defendant's motion to dismiss).

meaning that municipalities may not be held liable simply because their employees committed a constitutional violation. Id. at 691. Rather, "under § 1983, local governments are responsible only for 'their *own* illegal acts.'" Connick v. Thompson, 563 U.S. 51, 60 (2011) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (emphasis in original)).

There are two ways for a § 1983 claim against a municipality to proceed: "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice." Forrest v. Parry, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" Id. (quoting Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990)).

"A plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries." Id. (citing Kneipp v. Tedder, 95 F.3d 1199, 1213 (3d Cir. 1996)). This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged. Id. For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." Id. (internal quotations and alterations omitted). If the alleged policy or custom at issue is a failure to train or supervise, the plaintiff must show that this failure "amounts to deliberate indifference

7

to the rights of persons with whom the . . . employees will come into contact." Johnson v. City of Philadelphia, 975 F.3d 394, 403 (3d Cir. 2020) (citations and internal quotation omitted).

As noted above, a claim against a government employee named in his official capacity is indistinguishable from a claim against the governmental entity that employs the defendant. See Kentucky, 473 U.S. at 165–66 ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). Thus, to state a § 1983 claim against a public entity's employee acting in an official capacity, a complaint also must allege that a constitutional deprivation was caused by an official policy or informally adopted custom. Garcia v. Philadelphia Dist. Att'y's Off., No. 23-1224, 2023 WL 3750604, at *2 (3d Cir. June 1, 2023) (non-precedential) (*per curiam*) (internal citations omitted), cert. denied, 144 S. Ct. 850 (2024).

B.   **DAO's Motion to Dismiss**

The DAO argues that the Court should dismiss the official capacity claims against former District Attorney Williams because, even assuming the DAO had an unconstitutional disclosure policy as alleged, the policy would have been adopted by the District Attorney when performing his criminal prosecutorial function, and, in this role, he serves as a State officer who cannot be sued for damages under § 1983. (See generally ECF No. 62-1 at 5-14.) There are two components to this argument. First, that the DAO is not a standalone governmental entity suable in its own right under § 1983. (ECF No. 62-1 at 10.) Second, that the District Attorney in his official capacity enjoys sovereign immunity as an officer of Pennsylvania when adopting policies governing how line prosecutors exercise their prosecutorial functions and, accordingly, cannot be liable for damages under § 1983. (*Id.* at 5, 9, 14.) The Court will address each of these in turn.

1.      **DAO as a Separate Entity Under § 1983**

The DAO argues that the official capacity claim against Defendant Williams fails because the DAO is not a "person" under § 1983 as it is not a standalone municipal entity suable in its own right. (Id. at 10-11 (citing Will, 492 U.S. at 64).)

Generally, a sub-division of a local government is not separate from the municipality of which it is a part and, accordingly, is not a proper defendant in a § 1983 action. See, e.g., Martin v. Red Lion Police Dep't, 146 F. App'x 558, 562 n.3 (3d Cir. 2005) (non-precedential) (*per curiam*) ("[T]he Red Lion Police Department, as the sub-division of defendant Red Lion Borough through which the Red Lion Borough fulfills its policing functions, was not a proper defendant."). Whether the DAO is an entity separate from the City is an unsettled question in this District. One line of cases rely upon two sources to conclude that the Philadelphia DAO is not suable separately from the City, and therefore, not subject to suit under § 1983: (1) a Pennsylvania statute, 53 Pa. Cons. Stat. Ann. § 16257, requiring suits against a "department" of the City of Philadelphia to be brought "in the name of the city of Philadelphia" because the departments no longer have "a separate corporate existence" from the City; and (2) a passage in Reitz v. County of Bucks, 125 F.3d 139, 142 (3d Cir. 1997), in which the Third Circuit stated, "the Bucks County District Attorney's Office is not an entity for purposes of § 1983 liability."[6] Other courts in this District

---

[6] See, e.g., Woolford v. Bartol, No. 22-3757, 2022 WL 11804035, at *5 (E.D. Pa. Oct. 20, 2022) (Baylson, J.) ("Moreover, even if [the plaintiff] had sufficiently alleged a policy or custom, the Philadelphia Police Department and the Philadelphia District Attorney's Office are not proper entities subject to suit under § 1983."); Durham v. City of Philadelphia, No. 17-5152, 2019 WL 3202506, at *6 (E.D. Pa. July 16, 2019) (Smith, J.) (citing Reitz and other cases from the Eastern District holding that district attorney's offices "are not entities subject to liability under section 1983"); Brinson v. City of Philadelphia, No. 11-7479, 2012 WL 642057, at *2 (E.D. Pa. Feb. 28, 2012) (DuBois, J.) ("Local prosecutorial offices are not legal entities separate from the local governments of which they are a part and, accordingly, may not be sued under § 1983." (citing both sources)). Notably, the Third Circuit has also relied on Reitz in non-precedential opinions for the proposition that a district attorney's office is not a separate entity. See, e.g., Ellakkany v.

have permitted suits against the Philadelphia DAO, criticizing "reli[ance] on this single line" from Reitz, which is "arguably dicta," and reliance on 53 Pa. Cons. Stat. Ann. § 16257 "without any explanation, independent analysis, or scrutiny into the precise contours of § 16257." Sourovelis v. City of Philadelphia, 103 F. Supp. 3d 694, 709-12 (E.D. Pa. 2015) (Robreno, J.).[7]

The Pennsylvania courts have recently touched on some of these issues. In Krasner v. Henry, 319 A.3d 56 (Pa. Commw. Ct. 2024), the Commonwealth Court held that Act 40, a legislative provision authorizing the Attorney General to appoint a special prosecutor to investigate and prosecute crimes committed on SEPTA, is constitutional under the Pennsylvania Constitution. In its analysis, the court held that the City of Philadelphia is not a county, it is a municipality governed by the home rule statute, and that the Philadelphia District Attorney is therefore not a county officer. Because the City is governed by home rule, the Court held that the Pennsylvania General Assembly has express constitutional authority to limit the municipality's (i.e., the District Attorney's) power.

The court explained the distinction between a municipality governed by the home rule statute and county government. The City, the court explained, is governed by a home rule charter adopted in 1951, and article IX, section 13 of the Pennsylvania Constitution abolished county

---

The Common Pleas Ct. of Montgomery Cnty., 658 F. App'x 25, 28 (3d Cir. 2016) (non-precedential) (*per curiam*) ("The District Attorney's Office of Montgomery County is unlikely to survive as a defendant because the department would not be considered separate from the municipality itself (which is not named as a party to this lawsuit).").

[7] See also White v. City of Philadelphia, No. 23-4538, 2024 WL 1536745, at *5 (E.D. Pa. Apr. 8, 2024) (Bartle, J.) (following Sourovelis to conclude that the City could not be held liable for customs related to training of prosecutors since "[t]he Philadelphia District Attorney's Office is a separate entity from the City and is not under its control"); Poteat v. Lydon, No. 22-2114, 2023 WL 6620368, at *3 (3d Cir. Oct. 11, 2023) (non-precedential) (affirming dismissal of official capacity claims against the District Attorney of Lehigh County as not plausible but noting "[t]he DA might have been subject to liability for § 1983 claims if its official policy or custom caused Poteat's deprivation of rights[.]"), cert. denied, 144 S. Ct. 1123 (2024).

officers in Philadelphia. Id. at 75–76. As a home rule municipality, the General Assembly retains constitutional authority to limit the scope of any municipality's home rule governance. Id. at 76. The court also noted that the Pennsylvania Constitution does not expressly or by clear implication grant a district attorney in a home rule municipality any power. Id.

In concluding that the Philadelphia District Attorney is a City—not county—officer, the court stated that while article IX, section 4 of the Pennsylvania Constitution identifies district attorneys as county officers, that provision does not apply to a county that has adopted municipal home rule, like Philadelphia. Id. at 77–78. The court cited article IX, section 13(f) of the Pennsylvania Constitution, declaring that upon adoption of this amendment, "all county officers shall become officers of the City of Philadelphia," and cites a prior Commonwealth Court opinion, affirmed by the Pennsylvania Supreme Court, that the Philadelphia District Attorney is a City officer. Id. at 78. Accordingly, the court found that Act 40 does not violate the Pennsylvania Constitution as it does not intrude upon the Philadelphia District Attorney's territorial jurisdiction. Id. at 78.

Though the Commonwealth Court's opinion indicates that perhaps the DAO is not an entity separate from the City and thus not independently amenable to suit, the case is now before the Pennsylvania Supreme Court, which heard argument on May 14, 2025. In light of an impending decision from the Pennsylvania Supreme Court that may bear relevance to this issue, the Court declines at this stage to dismiss the DAO as a defendant.

    2.    **Pennsylvania Law on Role of the DAO**

The second component of the DAO's argument for dismissal is premised on the assertion that the District Attorney in his official capacity was essentially a State actor—rather than a municipal actor—when he adopted the policy at issue because, the DAO contends, District

11

Attorneys function as State officials when they prosecute crimes. (Id. at 11-14.) As a State official, the District Attorney would be immune from suit. Will, 491 U.S. at 71. This argument is based on the theory that District Attorneys have a "hybrid" status – acting as Commonwealth officials at times, and as county officers at times, depending on the function of the challenged conduct, be it prosecutorial, administrative, or managerial. Pennsylvania law, however, does not support the construct that the DAO posits.

State law controls whether a government agency, or individual acting in his official capacity or as policymaker,[8] is part of the State, *i.e.*, subject to sovereign immunity, or is acting on behalf of the county, for purposes of the § 1983 personhood inquiry. See McMillian v. Monroe Cnty., 520 U.S. 781, 786 (1997) (explaining, in deciding whether a Sheriff acting in a law enforcement capacity was a county or state policymaker for purposes of official capacity claims, that the "inquiry is dependent on an analysis of state law"); see also Coleman v. Kaye, 87 F.3d 1491, 1504 (3d Cir. 1996) (applying New Jersey law to conclude that "when county prosecutors execute their sworn duties to enforce the law by making use of all the tools lawfully available to them to combat crime, they act as agents of the State," but that "when county prosecutors are called upon to perform administrative tasks unrelated to their strictly prosecutorial functions, such as a decision whether to promote an investigator [as in this case], the county prosecutor in effect acts on behalf of the county that is the situs of his or her office").

Although the Third Circuit has not directly addressed whether the Philadelphia DAO is a person for § 1983 purposes, it has considered whether it is entitled to Eleventh Amendment

---

[8] "In a claim involving the District Attorney's Office, it is 'undeniable' that the District Attorney himself 'is the highest policymaker within the office.'" Est. of Tyler ex rel. Floyd v. Grossman, 108 F. Supp. 3d 279, 297 (E.D. Pa. 2015) (quoting Whitfield v. City of Philadelphia, 587 F. Supp. 2d 657, 670 (E.D. Pa. 2008)).

immunity.⁹ In Carter v. City of Philadelphia, 181 F.3d 339 (3d Cir. 1999), the Third Circuit held that "the Philadelphia District Attorney's Office is a local agency not within the Commonwealth's Eleventh Amendment immunity for purposes of claims arising from administrative and policymaking—rather than prosecutorial—functions." Id. at 358. In analyzing the whether the Philadelphia DAO is entitled to Eleventh Amendment immunity, the Third Circuit looked to Pennsylvania's Constitution, statutes, and caselaw which define District Attorneys as local officers and District Attorney's offices as local entities. Id. at 348–50 (citing, *inter alia*, Pa. Const., Article IX, Section 4; Pennsylvania statutes governing the establishment and funding of District Attorney offices and the election of District Attorneys). The Third Circuit stated that "Pennsylvania case law makes it clear that performance of an essential sovereign function on behalf of or in the name of the state does not give rise to state surrogate status under state law." Id. at 351 (citing Pennsylvania cases).¹⁰ Although the Third Circuit assumed the Philadelphia DAO had a "hybrid

---

⁹ Eleventh Amendment immunity extends to state agencies and state officers if the state is the real party in interest. To determine whether the state is the real party in interest in the Third Circuit, this analysis is driven by the three "Fitchik factors": (1) most importantly, whether a money judgment would come from the State; (2) the status of the agency under state law; and (3) what degree of autonomy the agency has. Callahan v. City of Philadelphia, 207 F.3d 668, 680 (3d Cir. 2000) (quoting Fitchik v. N.J. Transit Rail Operations, Inc., 873 F.2d 655, 659 (3d Cir. 2000) (*en banc*)); see also Est. of Lagano, 769 F.3d at 857-58 ("Fitchik provides the proper framework for analyzing Eleventh Amendment sovereign immunity as it applies to county prosecutors, and on remand the District Court must apply Fitchik to determine whether the BCPO is entitled to Eleventh Amendment sovereign immunity in this case.").

¹⁰ The Supreme Court in Van de Kamp v. Goldstein, drew a distinction between administrative duties concerning functions such as 'workplace hiring, payroll administration, the maintenance of physical facilities,' which are far removed from the prosecutorial function, and duties that are 'directly connected with the conduct of a trial' and that 'require legal knowledge and the exercise of related discretion.'" 555 U.S. 335, 344-45 (2009). While Van de Kamp is often cited by courts regarding the functional analysis contained therein, its analysis was in the context of a discussion of individual prosecutorial immunity under Imbler v. Pachtman, 424 U.S. 409 (1976), not the potential availability of sovereign immunity for the offices in which those prosecutors worked. See id.

13

status" for purposes of assessing the DAO's argument—it performed both prosecutorial and administrative functions—its holding does not stand for that proposition.

Thus, whether the Philadelphia DAO here was performing a prosecutorial or administrative function when adopting the policy at issue is a question not suited for resolution at this stage of the case. Cf. Carter, 181 F.3d at 353 (reversing the district court's grant of a motion to dismiss and holding that the conduct complained of involved local policies relating to training, supervision and discipline "rather than decisions about whether and how to prosecute violations of state law"). The Court will allow Brown's Monell claims against former District Attorney Williams in his official capacity to proceed to discovery.

**B.     City's Motion to Dismiss**

The City argues that it cannot be held liable for Plaintiff's Monell claims because the conduct at issue reflects policies of the DAO, not the City. (See ECF No. 59 at 9-10.)[11] It asserts that it has no authority to create policies relating to the allegations in Brown's Complaint. (ECF No. 68 at 3-5.) Rather, Pennsylvania law empowers District Attorneys to investigate and prosecute crimes and the City cannot alter this legislative grant of authority. (Id. at 4 (citing 16 Pa. Cons. Stat. § 1402(a)[12] and Com. ex rel. Specter v. Freed, 228 A.2d 382, 383 (Pa. 1967)).)

---

[11] The City also moved to dismiss a malicious prosecution claim pursuant to Heck v. Humphrey, 512 U.S. 477 (1994), as barred by plaintiff's *nolo contendere* plea, see ECF No. 59 at 5–6, but the City acknowledged that this argument was in error in its reply brief, as Brown has not raised a malicious prosecution claim. (*See* ECF No. 68 at 2.)

[12] The current version of this statute is codified at 16 Pa. Cons. Stat. § 14302 and provides in relevant part: "The district attorney shall sign each bill of indictment and conduct in court each criminal and other prosecution, in the name of the Commonwealth or, if the Commonwealth is a party, that arises in the county for which the district attorney is elected, and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general."

But the City can, under certain circumstances, be liable for the actions of prosecutors when prosecutors are final municipal decisionmakers on matters of City policy or act in an administrative or investigative capacity, as opposed to a prosecutorial one. See Pembaur v. City of Cincinnati, 475 U.S. 469, 484–85 (1986) (holding that the county may be held liable, based on an examination of Ohio law, for a prosecutor's instruction to deputy sheriffs to break into a doctor's office to effect an arrest where the prosecutor's order to do so constituted the action of a final municipal decision-maker). The Commonwealth Court's decision in Krasner v. Henry, coupled with the Third Circuit's decision in Carter v. City of Philadelphia in which the Third Circuit found that the Philadelphia DAO is funded by the City of Philadelphia and DAO employees are treated by Pennsylvania law as local officials, left open the possibility that the DAO's policies can be attributed to the City.

For its part, the Complaint sufficiently alleges that "Defendant City of Philadelphia is a municipality of the Commonwealth of Pennsylvania and owns, operates, manages, directs and controls the District Attorney's Office which employs or employed the individual defendants during all times relevant to this action." Compl. (ECF 1), ¶ 7. Given the ambiguity about the District Attorney's status as an entity in the City and the Complaint's allegation, it is at least plausible that the City controls DAO policies and can be liable for the actions of final municipal decisionmakers in the DAO acting in an administrative or investigative capacity. The Court views it as prudent to re-assess the issue after the Pennsylvania Supreme Court issues its decision in Krasner v. Henry, which may shed more light on the Philadelphia DAO's relationship to the City.

Accordingly, the Court will **DENY** the City's Motion.

## V.     CONCLUSION

For the foregoing reasons, the DAO's Motion to Dismiss (ECF No. 62) and the City's Motion to Dismiss (ECF No. 59) will be denied.  The DAO and the City will be required to file responsive pleadings in accordance with Federal Rule of Civil Procedure 12(a)(4).  Additionally, the Court will order District Attorney Lawrence S. Krasner, in his official capacity, to be substituted as a party to this matter.

An appropriate Order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-1019 Brown v City\24-1019 Brown Memorandum MTDs.docx