**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **RA'SHEEN J. BROWN** <br> *Plaintiff,* <br><br>       **v.** <br><br> **CITY OF PHILADELPHIA, et al.,** <br> *Defendants.* | **CIVIL ACTION NO. 24-1019** |

**MEMORANDUM**

**Baylson, J.**                                                                                          **May 20, 2026**

## I.  INTRODUCTION

This action was brought by *pro se* Plaintiff Ra' Sheen J. Brown ("Plaintiff"), against

Defendants City of Philadelphia (the "City" or "Defendant City") and former District Attorney

Williams in his official capacity (the "DAO"), for violations of his civil rights under 42 U.S.C. §

1983 and Pennsylvania state law.  ECF 1.  For the following reasons, Plaintiff's Motion to Compel

is **DENIED**, and Defendant City's Motion for Summary Judgment is **GRANTED**.

## II.  UNDISPUTED MATERIAL FACTS

### A.  The October 2011 Shooting

In October 2011, Akkier McKinney ("the victim") and a man identified as "Sheed" began

to argue on the sidewalk in front of El Ran's Bar in the Frankford section of Philadelphia.  ECF

137-1, ¶ 2 ("City's SUMF"); ECF 140 at 6, ¶ 2 ("Plaintiff's Response").  The victim accused Sheed

of being disrespectful and asked Sheed to step into the street to fight.  City's SUMF, ¶ 2; Plaintiff's

Response at 6, ¶ 2.  Sheed responded with: "I don't do this fighting, I play with guns."  City's

SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  Witnesses began to gather outside the bar as the two

men continued their heated exchange.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  Plaintiff,

Christopher Graham, Alan Jackson, and an unidentified man in a gray hoodie came out of the bar to help Sheed. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. After Sheed told Plaintiff to "get the .40," Plaintiff walked off with Graham and the man in the hoodie, while Sheed and Jackson continued to argue with the victim. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.

Shortly thereafter, Plaintiff returned to the scene in a silver car, exited the vehicle, and approached the victim's vehicle. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Looking at Sheed and Plaintiff, the victim stated "Oh, I see how you all trying to do." City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Once Sheed yelled "light him the fuck up," Plaintiff fired his weapon at the victim several times. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. William Fowler, the bartender at El Ran's Bar, observed the altercation and shooting and ran back into the bar for cover. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. After the shooting, Fowler exited the bar, found the victim alive, and contacted police. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. The police transported the victim to the hospital, where he later died. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.

Officers retrieved five .40 caliber Smith & Wesson cartridge casings from the scene. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Fowler and another eyewitness, Lalana Brown, gave statements to police about the shooting. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Fowler identified Plaintiff, who he knew, as the shooter. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Graham told police he had not witnessed the shooting but heard gunshots from around the street corner. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Graham indicated he called Plaintiff's cell phone repeatedly but was unable to reach him. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. The next morning, Graham asked Plaintiff what had happened to the victim. City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2. Plaintiff laughed and replied, "he's done, it's over, finito."

2

City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  After police showed Graham photographs taken from surveillance video, Graham identified Plaintiff as being present at the shooting.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.

### B.  Plaintiff's 2013 Trial

In June 2013, Plaintiff proceeded to trial.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  During trial, Fowler, Lalana Brown, and Graham all recanted their accounts of the crime.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  Lalana Brown and Graham claimed to have been intoxicated when they gave their initial statements to police and were uncooperative on direct examination.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  Fowler alleged the police coerced his written statement as he was not given anything to drink for twelve hours and asserted the officers punched and slapped him until he identified Plaintiff as the shooter.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.  The Commonwealth introduced Fowler, Lalana Brown, and Graham's initial accounts of the shooting as prior inconsistent statements.  City's SUMF, ¶ 2; Plaintiff's Response at 6, ¶ 2.

Detective James Pitts' only involvement in Plaintiff's case was: (1) taking a statement from Mr. Fowler along with Detective Keen, and (2) testifying to the contents of that statement at trial.  City's SUMF, ¶ 3; Plaintiff's Response at 6, ¶ 3.  Different detectives took Mr. Graham's statement.  City's SUMF, ¶ 3; Plaintiff's Response at 6, ¶ 3.

On June 26, 2013, Plaintiff was convicted by jury of first-degree murder, conspiracy to commit murder, possession of a firearm by a prohibited person, carrying a firearm on a public street in Philadelphia, and possessing an instrument of crime.  City's SUMF, ¶ 4; Plaintiff's Response at 6, ¶ 4.  Plaintiff was sentenced to life imprisonment.  City's SUMF, ¶ 4; Plaintiff's Response at 6, ¶ 4.  Plaintiff appealed, alleging in part that he was entitled to an evidentiary hearing

3

due to after-discovered evidence in the form of newspaper articles reporting misconduct allegations against Detective Pitts. City's SUMF, ¶ 5; Plaintiff's Response at 6, ¶ 5.

On February 17, 2016, the Superior Court affirmed and rejected Plaintiff's claims regarding Detective Pitts. City's SUMF, ¶ 5; Plaintiff's Response at 6, ¶ 5; see also Commonwealth v. Brown, 134 A.3d 1097, 1109 (Pa. Super. 2016) ("[E]ven assuming such testimony is producible and admissible at an evidentiary hearing, these statements would solely be used to impeach Detective Pitts's credibility. The proposed witnesses [Nafis Pinkney, Shaquille Rainey, and Unique Drayton], if available to testify, would allege that Detective Pitts committed misconduct in coercing their statements in other murder cases, but none of the witnesses can provide any new evidence concerning his conduct in this case."). The Pennsylvania Supreme Court denied review. City's SUMF, ¶ 6; Plaintiff's Response at 6, ¶ 6.

### C. Plaintiff's PCRA Proceedings

In August 2016, Plaintiff filed a Pennsylvania's Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. § 9545, *et seq.*, petition, raising ineffective assistance of counsel claims. City's SUMF, ¶ 7; Plaintiff's Response at 6. The PCRA court denied Plaintiff's petition, and the Superior Court affirmed. City's SUMF, ¶ 7; Plaintiff's Response at 6. In September 2019, Plaintiff filed a second PCRA petition. City's SUMF, ¶ 8; Plaintiff's Response at 6. The DAO then produced to Plaintiff a "police misconduct disclosure packet" regarding Detective Pitts, including misconduct reports from 2002, 2011, and 2012. City's SUMF, ¶ 9; Plaintiff's Response at 7. In 2022, Plaintiff filed a supplemental PCRA petition, alleging the non-disclosure of Internal Affairs ("IA") materials relating to Detectives Pitts and Dove violated Brady. City's SUMF, ¶ 10; Plaintiff's Response at 7.

In March 2023, the Commonwealth, through the DAO, filed an answer to Plaintiff's supplemental PCRA petition ("PCRA Answer"). City's SUMF, ¶ 11; Plaintiff's Response at 7; see also ECF 137, Exhibit 5; ECF 140, Exhibit E. The DAO reviewed the evidence establishing Plaintiff's guilt unrelated to Detective Pitts and thus unaffected by the disclosure of Internal Affairs Department ("IAD") records, including: written statements provided by Graham and Lalana Brown that were corroborated by video, ballistics, and cell phone evidence; Graham's statement recounted that Plaintiff was instructed by Sheed to "go get the .40" shortly before the victim was shot with a .40 caliber gun, and Plaintiff admitted his guilt the next day to Graham and Sean Manning (i.e., when Graham asked Plaintiff about the victim, Plaintiff laughed and replied, "he's done, it's over, finito"). SUMF, ¶ 11; Plaintiff's Response at 7. The DAO stated that Lalana Brown confirmed what was in the video: that Plaintiff participated in the dispute with the victim and was standing at the corner where the gunman began his approach. SUMF, ¶ 11; Plaintiff's Response at 7. The DAO also noted Lalana Brown's unrecanted testimony concerning Sheed's theft of her phone indicated the coordinated and pre-planned nature of the violent assault on the victim. SUMF, ¶ 11; Plaintiff's Response at 7.

The DAO stated[1] that neither Mr. Graham nor Lalana Brown alleged mistreatment of the type claimed by Mr. Fowler, and Graham's recantation testimony fared especially poorly. SUMF, ¶ 11; Plaintiff's Response at 7. Detective Harkins, who testified at trial to the contents of Graham's statement, lacked a history of misconduct, which was also true of Graham's co-interviewer, Detective Bamberski. SUMF, ¶ 11; Plaintiff's Response at 7. The PCRA Answer further noted that Plaintiff's counsel at his 2013 criminal trial ("Plaintiff's trial counsel") conceded inculpatory

---

[1] The DAO and the City of Philadelphia are not the same entity but often work together in law enforcement.

movements that were filmed: Plaintiff returned to the scene shortly before the shooting and walked to the corner from where the bullets were fired, he continued around the corner and waited for a few minutes and then returned to the corner right before the gunfire began. SUMF, ¶ 11; Plaintiff's Response at 7. Plaintiff's trial counsel also conceded that Plaintiff was recorded as the last figure to flee after the shooting, which the prosecutor noted was consistent with being the shooter. SUMF, ¶ 11; Plaintiff's Response at 7.

Despite the video, physical, and testimonial evidence establishing Plaintiff's guilt, the DAO conceded the withheld IA records were material for Brady purposes. City's SUMF, ¶ 11; Plaintiff's Response at 7; ECF 140 at 7, ¶ 1 ("Plaintiff's SUMF"); ECF 152, ¶ 1 ("City's Response"). The DAO emphasized Fowler's statement that he saw Plaintiff shoot the victim because it had been taken by Detective Pitts and was introduced through his testimony. City's SUMF, ¶ 11; Plaintiff's Response at 7. The DAO based its concession regarding materiality on Detective Pitts' conduct in other cases, most of which was disclosed after Plaintiff's conviction. City's SUMF, ¶ 11; Plaintiff's Response at 7. The DAO explained it "lacked confidence" in the integrity of convictions that rest "in large part" on Pitts' testimony. City's SUMF, ¶ 11; Plaintiff's Response at 7. On May 5, 2023, the Court of Common Pleas granted Plaintiff's petition, vacated the sentence, and listed Plaintiff's case for retrial. City's SUMF, ¶ 12; Plaintiff's Response at 7.

### D. Plaintiff's *Nolo Contendere* Plea

On March 20, 2025, Plaintiff entered a *nolo contendere* plea to third-degree murder and possession of an instrument of crime. City's SUMF, ¶ 16; Plaintiff's Response at 7. In exchange for pleading no contest, the DAO recommended a sentence of three and one-half to seven years of imprisonment, with credit for time served. City's SUMF, ¶ 16; Plaintiff's Response at 7. The intention of the agreement was to permit Plaintiff to be released from prison as soon as possible.

6

City's SUMF, ¶ 16; Plaintiff's Response at 7.  Plaintiff affirmed that he understood the terms of the agreement and was not being coerced into pleading no contest.  City's SUMF, ¶ 16; Plaintiff's Response at 7.

The DAO summarized the facts to which Plaintiff was pleading *nolo contendere*: William Valor[2] would testify that on or about Monday, October 17, 2011, he was working inside of El Ran's bar, located at 5200 Oakland Street in Philadelphia.  City's SUMF, ¶ 17; Plaintiff's Response at 7.  Mr. Fowler would testify that an argument broke out between several individuals, and that Plaintiff was present and was part of the argument.  City's SUMF, ¶ 17; Plaintiff's Response at 7.  Following the argument, several individuals went outside, including the victim, who was known to Mr. Fowler as Akaier McKinney.  City's SUMF, ¶ 17; Plaintiff's Response at 7.  Mr. Fowler would testify that he knew Plaintiff through his brother, and when the incident spilled outside, he saw Plaintiff shoot the victim.  City's SUMF, ¶ 17; Plaintiff's Response at 7. Following the shooting, Plaintiff fled, and five fired cartridge casings were found at the scene. City's SUMF, ¶ 17; Plaintiff's Response at 7.  The DAO would also present Dr. Aaron Rosen, M.D., who, after being qualified as an expert in forensic pathology, would testify to a reasonable degree of medical and scientific certainty that the victim died of a perforating gunshot wound to the head.  City's SUMF, ¶ 17; Plaintiff's Response at 7.

Judge Giovanni O. Campbell, of the Court of Common Pleas, concluded: "I do find that the defendant has entered a knowing and voluntary plea of no contest, and I accept the factual basis as proffered by the Commonwealth, and accordingly do find him guilty of murder in the third

---

[2] As the City noted (and Plaintiff admits), this appears to be a typographical error and refers to William Fowler.  See City's SUMF at 8 n.1.  The Court notes there is no other person named Valor in this case.  Accordingly, the Court will refer to him as William Fowler.

degree and possession of an instrument of crime."  City's SUMF, ¶ 18; Plaintiff's Response at 7; see also ECF 137, Exhibit 8.  The court imposed a sentence of three and one-half to seven years of imprisonment.  City's SUMF, ¶ 18; Plaintiff's Response at 7.  Plaintiff did not seek reconsideration and did not file an appeal, and he remains convicted of third-degree murder.  City's SUMF, ¶ 18; Plaintiff's Response at 7.

### E. The City's Response to Plaintiff's Statement of Facts

The City has admitted that, outside of the DAO, there was "none" [sic] monitoring or auditing of Brady compliance.  Plaintiff's SUMF at 7, ¶ 2; City's Response, ¶ 2.  Additionally, the City has admitted that the Philadelphia Police Department ("PPD") transmitted misconduct records only "upon request via subpoena."  Plaintiff's SUMF at 8, ¶ 4; City's Response, ¶ 4.

### III.    PROCEDURAL HISTORY

Plaintiff filed a *pro se* Complaint on March 4, 2024, alleging claims against the City of Philadelphia, former Philadelphia District Attorney Seth Williams in his individual and official capacities, and various assistant district attorneys.  ECF 1.[3]  At the time he filed his Complaint, Plaintiff remained in custody and was awaiting retrial.  On April 17, 2024, this Court dismissed several of Plaintiff's claims upon statutory screening pursuant to 28 U.S.C. § 1915A(b)(1), including all individual capacity claims against the prosecutors, official capacity claims against the Assistant District Attorneys, and state law claims.  See ECF 6; ECF 7.  This Court ordered the case to proceed to service only on Plaintiff's Monell claims against the City and former District Attorney Williams in his official capacity (the "DAO").  See ECF 6; ECF 7.

---

[3] In May 2025, Plaintiff filed a related case (No. 25-2433) against the individual officers, which this Court dismissed without prejudice in January 2026.  See ECF 112.

In October 2024, this Court stayed this case pending resolution of Plaintiff's underlying criminal case. ECF 51. On April 15, 2025, this Court lifted the stay because the state court criminal proceedings concluded as the result of the negotiated *nolo contendere* plea. See ECF 56; ECF 57; ECF 58. Plaintiff was resentenced and released from custody because his sentence was completed. See Commonwealth v. Brown, CP-51-CR-0002569-2012 (C.P. Phila.).

Both the DAO and the City moved to dismiss the Complaint for failure to state a claim, which Plaintiff opposed. See ECF 59; ECF 62; ECF 63; ECF 66; ECF 68. On July 24, 2025, the Court denied both the DAO's and the City's Motions to Dismiss and ordered the Clerk of Court to substitute District Attorney Lawrence S. Krasner for former District Attorney Seth Williams. ECF 72; ECF 73. On August 8, 2025, the DAO answered the Complaint. ECF 75. The City answered the Complaint on August 13, 2025. ECF 76.

Plaintiff previously filed a partial Motion for Summary Judgment against the City on the Monell claim and municipal liability, which was denied without prejudice on December 16, 2025. ECF 91; ECF 96; ECF 98; ECF 100. Separately, on February 10, 2026, following a hearing, this Court stayed this case against the DAO, finding that, as a matter of law, the DAO is immune from § 1983 suits. See ECF 134; ECF 135. At Plaintiff's request, this Court agreed and authorized Plaintiff to take a Fed. R. Civ. P. 30(b)(6) deposition of a City designee, giving Plaintiff a chance to obtain testimony to prove his Monell claim. See ECF 135; ECF 141.

On February 12, 2026, the City filed a Motion for Summary Judgment. ECF 137. Plaintiff opposed the Motion on February 19, 2026. ECF 140. The City filed a reply brief on March 6, 2026. ECF 152. Following the Rule 30(b)(6) deposition of Captain Scott Drissel on March 10, 2026 (ECF 155), Plaintiff filed a Motion to Compel (see ECF 156), and both Parties filed

9

supplemental briefing on the City's Motion for Summary Judgment (see ECF 159; ECF 160; ECF 161).  This case is now ripe for resolution.

## IV.    PARTIES' CONTENTIONS – MOTION TO COMPEL

This Court will first address Plaintiff's Motion to Compel.  See ECF 156.  Prior to the City filing its Motion for Summary Judgment, and at Plaintiff's request, this Court permitted Plaintiff to take a Fed. R. Civ. P. 30(b)(6) deposition of a City designee, giving Plaintiff a chance to obtain testimony in support of his Monell claim.  See ECF 135; ECF 141.  Plaintiff proposed a list of topics for the deposition, some of which were very broad and went beyond the scope of Monell liability (ECF 136). The City objected to these topics (see ECF 138), and Plaintiff filed a response in support (ECF 139).  This Court reviewed the proposed topics and issued an Order outlining the permitted topics for the deposition.  See ECF 146.  On March 10, 2026, Plaintiff took the Rule 30(b)(6) deposition of Captain Drissel (ECF 155).  Following the Rule 30(b)(6) deposition (see id.), on March 16, 2026, Plaintiff filed a Motion to Compel and Motion for Sanctions.  ECF 156.

### A.  Plaintiff's Motion to Compel (ECF 156)

In his Motion, Plaintiff argues that Captain Drissel was not adequately prepared for the deposition, as demonstrated by his answers of "I don't know" or "I'm not aware," and thus the City should be bound by these answers through adverse inferences for summary judgment and trial and/or being precluded from introducing certain evidence at summary judgment and trial.  ECF 156 at 2–3, 5, 14.  Moreover, Plaintiff argues this failure constitutes a "non-appearance" warranting sanctions under Fed. R. Civ. P. 37.  Id. at 5, 11–12.  Plaintiff further contends that this pattern of institutional ignorance constitutes evidence of deliberate indifference for Monell.  Id. at 7–8, 11–13.  Alternatively, Plaintiff asks for a continued deposition to elicit testimony that he claims is missing, along with attorney's fees.  Id. at 6, 14.

10

### B. Defendant City of Philadelphia's Response (ECF 158)

On March 27, 2026, the City filed a response in opposition to Plaintiff's Motion to Compel. ECF 158. The City argues that Plaintiff did not properly meet and confer, and regardless, there was no deficiency in the preparation for the 30(b)(6) witness. Id. at 3. The City contends that Captain Drissel substantively answered the topics within the 30(b)(6) notice and answered "I don't know" to the numerous questions that Plaintiff asked that were outside the scope. Id. at 3–5. The City further argues that Plaintiff's Motion demands two forms of relief that are mutually exclusive: (1) a continued deposition to elicit testimony he claims is missing, and (2) adverse inferences and preclusion sanctions premised on Captain Drissel's testimony already establishing the facts Plaintiff claims he needs. Id. at 5–6. Lastly, the City argues Plaintiff cannot recover attorney's fees because he is a *pro se* litigant. Id. at 6–7.

### V.    DISCUSSION – MOTION TO COMPEL

This Court will **DENY** Plaintiff's Motion to Compel and Motion for Sanctions (ECF 156). The Court agrees with the City that Plaintiff repeatedly asked Captain Drissel questions outside the scope of the Rule 30(b)(6) notice, and the "I don't know" answers were appropriate responses to the questions asked. See ECF 158 at 3–5. The Court finds that Captain Drissel responsively and substantively answered the questions and topics that were within the scope of the 30(b)(6) notice. See id. Moreover, Plaintiff has failed to provide any precedent that the City's position of being a repository is unconstitutional, see ECF 156 at 8, and Plaintiff has failed to show there was any obfuscation or improper testimony at the Rule 30(b)(6) deposition, see id. at 8–13.[4] Lastly,

---

[4] Plaintiff's procedural failures, including his failure to meet and confer with the City regarding the Motion, as well as his failure to base his Motion on the specific 30(b)(6) topics that this Court permitted prior to the deposition (see ECF 146), are also fatal to Plaintiff's Motion to Compel.

Plaintiff is not entitled to attorney's fees, as "a *pro se* litigant who is *not* a lawyer is *not* entitled to attorney's fees." Kay v. Ehrler, 499 U.S. 432, 435 (1991) (emphasis in original). Accordingly, Plaintiff's Motion to Compel (ECF 156) is **DENIED**.[5]

### VI.    LEGAL STANDARD – SUMMARY JUDGMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, by "citing to particular parts of materials in the record," show that a fact is "genuinely disputed." Fed. R. Civ. P. 56(c)(1). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56,

---

[5] As the undersigned commented at one point, in view of many newspapers and media reporting of improper conduct by PPD homicide detectives in prior years, the City's practices of IAD investigative materials should be managed by attorneys with experience in § 1983 cases, as Plaintiff has argued, although established precedent does not require this practice.

the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## VII. PARTIES' CONTENTIONS – MOTION FOR SUMMARY JUDGMENT – HECK V. HUMPHREY

### A. Defendant City of Philadelphia's Motion for Summary Judgment (ECF 137; ECF 152; ECF 160)

The City argues that Plaintiff's claims are barred by Heck v. Humphrey, 512 U.S. 477 (1994), because Plaintiff's claims "require[] him to prove that he was convicted of murder because of the deliberate suppression of Detective Pitts's IA records" but the "factual basis of Plaintiff's no contest plea was the eyewitness statement of William Fowler, the only witness whose statement Detective Pitts took." ECF 137 at 12; see also ECF 160 at 4–5. Plaintiff alleges Pitts' IA records were improperly withheld from him in violation of Brady, and that those records were material to his criminal case, as they could have impeached Detective Pitts' testimony relaying Mr. Fowler's eyewitness statement. ECF 137 at 12–16; ECF 160 at 4–5. But the City contends that Plaintiff cannot show that the suppressed records were material without undermining the factual basis of his plea, which was Mr. Fowler's account that Plaintiff murdered the victim. ECF 137 at 12–16; ECF 160 at 4–5. Thus, Plaintiff's success on his claims "would necessarily demonstrate the invalidity" of his conviction. ECF 137 at 12–16; ECF 160 at 4–5.

Moreover, the City contends that Poventud v. City of New York, 750 F.3d 121 (2d Cir. 2014) (en banc); Jackson v. Barnes, 749 F.3d 755 (9th Cir. 2014); and Dennis v. City of Phila., 379 F. Supp. 3d 420 (E.D. Pa. 2019) are not applicable here. ECF 160 at 1–5. The City argues those cases do not stand for the principle that a second conviction never bars a § 1983 claim but rather apply Heck to allow each § 1983 action to proceed after distinguishing between the allegedly tainted evidence and the factual predicate of the second conviction. Id. at 4. The City argues that

13

because Plaintiff's plea was predicated on the evidence he challenges in his § 1983 suit, Plaintiff's claims are Heck-barred.  Id. at 4–5; City's SUMF, ¶ 17.

### B. Plaintiff's Response in Opposition (ECF 140; ECF 159; ECF 161)

In response, Plaintiff argues his claims are not Heck-barred.  ECF 140 at 11–12; ECF 159 at 4–9; ECF 161 at 2–3.  Plaintiff contends that although the Third Circuit has not yet ruled on this issue, persuasive authority from the Second and Ninth Circuits are applicable here.  ECF 159 at 5; ECF 161 at 2–3.  Plaintiff argues his case is identical to Poventud and Jackson.  ECF 159 at 5–8; see also ECF 161 at 2–3 (citing Dennis v. City of Phila., 603 F. Supp. 3d 214, 230–32 (E.D. Pa. 2022) (Robreno, J.)).  Plaintiff states his initial conviction was vacated because of a Brady violation (that the DAO conceded), followed by a post-vacatur *nolo contendere* plea to a lesser charge and immediate release.  ECF 140 at 11–12; ECF 159 at 4–9; ECF 161 at 2–3.  As in Poventud and Jackson, Plaintiff argues his initial conviction was "declared invalid by a state court," and his later plea occurred after the evidence was disclosed and rests on a separate record unaffected by the Brady violation.  ECF 159 at 5–8; ECF 161 at 2–3.  Plaintiff argues his § 1983 claim focuses on the Brady violation underlying the vacated conviction, not the later plea.  ECF 140 at 11–12; ECF 159 at 4–9; ECF 161 at 2–3.  Plaintiff contends a favorable judgment would not "necessarily imply" the invalidity of any outstanding conviction because it would bear only on the vacated, Brady-tainted conviction.  ECF 159 at 7–8.

### VIII. DISCUSSION – MOTION FOR SUMMARY JUDGMENT – PLAINTIFF'S CLAIMS ARE BARRED BY HECK V. HUMPHREY

In Heck, the Supreme Court held that to recover damages for an allegedly unconstitutional conviction or imprisonment, a § 1983 plaintiff must prove that the conviction has been reversed on direct appeal or impaired by collateral proceedings.  512 U.S. at 484–85; see also Gilles v.

Davis, 427 F.3d 197, 208–09 (3d Cir. 2005).  Therefore, the district court "must look at the plaintiff's § 1983 claims, assume the plaintiff successfully proves those claims, and evaluate if such a resolution would undermine the legal validity of his conviction or sentence.  If the court concludes that a judgment in the plaintiff's favor on such a claim would undermine the conviction or sentence, then Heck's favorable termination requirement would apply.  If a judgment in the plaintiff's favor would not undermine his conviction or sentence, then Heck's favorable termination requirement would not apply."  Herrera v. Agents of Pa. Bd. of Prob. & Parole, 132 F.4th 248, 256 (3d Cir. 2025) (cleaned up).

The City argues that Plaintiff's claims are Heck-barred, because Plaintiff cannot show that the Detective Pitts IA records were material without undermining the factual basis of his *nolo contendere* plea, which was Mr. Fowler's account that Plaintiff murdered the victim.  ECF 137 at 12–16; ECF 160 at 4–5.  Thus, Plaintiff's success on his § 1983 claims "would necessarily demonstrate the invalidity" of his conviction.  ECF 137 at 12–16; ECF 160 at 4–5.  Moreover, the City contends that Poventud, Jackson, and Dennis, 379 F. Supp. 3d 420, are not applicable to Plaintiff's case because Plaintiff's plea was predicated on the evidence he challenges in his § 1983 suit.  ECF 160 at 1–5.

In response, Plaintiff argues his claims are not Heck-barred, and his case is identical to Poventud and Jackson.  ECF 140 at 11–12; ECF 159 at 4–9; see also ECF 161 at 2–3 (citing Dennis, 603 F. Supp. 3d at 230–32).  Plaintiff argues his § 1983 claim focuses on the Brady violation underlying Plaintiff's vacated conviction, not his later *nolo* plea, and rests on a separate record unaffected by the Brady violation.  ECF 140 at 11–12; ECF 159 at 4–9; ECF 161 at 2–3.  Plaintiff contends a favorable judgment in this civil case would not "necessarily imply" the

invalidity of any outstanding conviction because it would bear only on his vacated, Brady-tainted conviction.  ECF 159 at 7–8.

In Poventud, 750 F.3d at 124, the plaintiff was convicted of attempted second-degree murder and other related crimes.  The plaintiff brought a collateral challenge under Brady, and his conviction was vacated.  Id.  The plaintiff then pleaded guilty to attempted robbery in the third degree.  Id.  The plaintiff later sued the City of New York and various police officers under § 1983 for violations of his constitutional rights at trial.  Id.  The district court judge, Judge Batts, granted summary judgment because the plaintiff's § 1983 Brady claim was Heck-barred, as his plea was at odds with his alibi defense at his earlier trial and thus called into question the validity of that plea.  Id. at 127; see Poventud v. City of New York, No. 07 CIV. 3998 DAB, 2012 WL 727802 (S.D.N.Y. Mar. 6, 2012).  The plaintiff then appealed to the Second Circuit, where a divided panel held that Heck did not apply because the plaintiff had been released from prison and "therefore no longer had access to *habeas corpus* remedies."  Poventud, 750 F.3d at 127; see also Poventud v. City of New York, 715 F.3d 57, 60 (2d Cir. 2013).

The Second Circuit then ordered rehearing *en banc* and vacated the panel's opinion, holding that the claim was not Heck-barred.  Poventud, 750 F.3d at 124–25.  The Second Circuit majority held that the district court erroneously treated the § 1983 claim as a malicious prosecution claim and thus measured Mr. Poventud's admission in the subsequent plea agreement against his claims in his Brady argument, id. at 134–35, explaining that if it was a malicious prosecution claim, the claim would have been barred because of the favorable termination element of malicious prosecution.  Id.; see also id. at 136–38.  As such, Brady-based § 1983 claims imply only the invalidity of the challenged conviction in which the Brady violation occurred, and thus the remedy

for a Brady violation is vacatur of the judgment of conviction and a new trial in which the defendant now has the Brady material available to him. Id. at 132–33.

However, Judge Jacobs dissented because the majority opinion undermined both the finality premise of Heck and the truth-seeking foundation of Brady. Id. at 151 (Jacobs, J., dissenting). As to Heck, the plaintiff's § 1983 claim impugns his guilty plea because he asserts actual innocence and that his guilty plea was obtained through coercion. Id. at 153. Moreover, the vacatur of the earlier conviction was not a favorable termination because it culminated in the guilty plea. Id. Under precedent, see DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996), vacatur of a conviction with remand for retrial is not a final favorable termination as that term was understood at common law. Id. at 161. And the "vacatur of the [earlier conviction] cannot be deemed a favorable outcome under Heck without uncoupling the vacatur from the guilty plea to which it led." Id. Thus, because the § 1983 claim did "call into question the validity of his conviction," Judge Jacobs concluded the claims were Heck-barred. Id. at 163.

Judge Jacobs further dissented because the majority's analysis was premised on a fundamental distortion of Brady. Id. at 155. The "truth-finding function" of Brady is in the elements of a Brady-based § 1983 action—materiality, causation, and damages. Id. But to Judge Jacobs, none of these elements could be proven without impugning the guilty plea, and Heck forbids this. Id. Specifically, the plaintiff in Poventud would need to prove that the nondisclosure was material, but the guilty plea establishes that the Brady evidence is immaterial. Id. at 155–57; see also id. at 157 (plaintiff "cannot have it both ways: he cannot state that he is guilty, that he was present on the day in question and participated in the crime, but that he was nonetheless prejudiced at his trial by the nondisclosure of evidence that could have helped him only by suggesting that the accurate testimony of the victim should not be believed"). Judge Jacobs also persuasively

17

noted the plaintiff in Poventud cannot establish proximate cause without impugning his guilty plea. Id. at 158–59. For proximate cause, the undisclosed evidence could only have been used to support an inference that the plaintiff was elsewhere at the time of the crime, and he admitted (through his guilty plea) that this inference is false. Id. at 159. Furthermore, Judge Jacobs stated it was "inherently difficult" to claim damages based on imprisonment, given the guilty plea. Id. at 160.

Judge Livingston concurred in Judge Jacobs' dissent and further dissented because the majority distorted Brady and its progeny. Id. at 165 (Livingston, J., dissenting). The majority permitted the plaintiff in Poventud to "have it both ways" because the guilty plea, in which he admitted to committing the crime, was "fundamentally at odds" with his false alibi at trial. Id. at 166, 172. To Judge Livingston, the plaintiff's claim is ultimately defeated "by rendering implausible any contention that the undisclosed impeachment evidence is material" because the undisclosed evidence could "only have been used at trial to support a perjurious defense." Id. at 165. Judge Livingston further noted the majority erred by reading materiality out of Brady. Id. at 169. Rather, the guilty plea "affirms the truth of what the impeachment evidence could only have helped him deny at trial," and thus "establish[ed] the immateriality of the undisclosed evidence as a matter of law." Id. at 170–71. But because there is no constitutional error from the nondisclosure of immaterial evidence, the claim should have been dismissed on the pleadings. Id. at 168, 171.

Judge Livingston also agreed with Judge Jacobs' dissent regarding Heck. Id. at 171. Specifically, Judge Livingston asserted the plaintiff in Poventud could not prove his § 1983 claim without establishing that the nondisclosed impeachment evidence was material. Id. at 171–72. In other words, the plaintiff would need to prove that the "omitted impeachment material creates a reasonable doubt" as to whether he committed the crime, but to do this, the plaintiff must "impugn"

the "veracity of his own plea," in which he admitted to committing the crime. Id. Thus, Judge Livingston concluded the plaintiff's claim was Heck-barred. Id.

In Jackson, 749 F.3d at 758, the plaintiff was convicted of rape and first-degree murder at a trial in which the prosecution relied on evidence obtained in violation of Miranda. After the conviction was reversed, the plaintiff was again convicted of first-degree murder, but the retrial was "completely insulated from the illegal testimony." Id. at 759. The plaintiff later filed a § 1983 suit for the Miranda violation at the first trial. Id. Applying Poventud, the Ninth Circuit unanimously held that the § 1983 claim was not barred by Heck, because the outstanding second conviction was insulated from the inculpatory statements that were the basis of the § 1983 suit. Id. at 760–61. Under Heck, a judgment in the plaintiff's favor would only bear on his first conviction (in which the Miranda violation occurred) and that conviction was reversed. Id.

Although the Third Circuit has not yet taken a position specifically on this issue, courts within the Third Circuit have found that "Brady, fabrication of evidence, coercion, and deliberate deception claims raised under § 1983 to challenge proceedings that secured an overturned first conviction do not necessarily imply the invalidity of a second conviction that is based upon the same conduct."[6] See, e.g., Wagner v. City of Phila., No. 25-CV-1450, 2026 WL 789450, at *7

---

[6] In Dennis, 379 F. Supp. 3d at 427–31, Judge Robreno applied Poventud and Jackson in finding at the Rule 12 stage that the plaintiff's § 1983 claims were not barred by Heck, because success on the plaintiff's § 1983 action would only undermine the validity of his 1992 conviction where the alleged constitutional violations occurred, which was overturned. At trial, Judge Sánchez dismissed the City following a Rule 50(a) motion, as the plaintiff did not show sufficient evidence for a Monell claim. No. CV 18-2689, ECF 241–42; see also ECF 258, Trial Tr. Day 7, 86:4–92:7. The City also argued the plaintiff's claims were barred by Heck, but Judge Sánchez did not address this issue in granting the Rule 50(a) motion. No. CV 18-2689, ECF 241–42; see also ECF 258, Trial Tr. Day 7, 86:4–92:7.

However, the claim against the individual defendants proceeded to a jury verdict, where the jury found in favor of the plaintiff and awarded both compensatory and punitive damages. See Dennis v. City of Phila., No. CV 18-2689, 2024 WL 3904046, at *1 (E.D. Pa. Aug. 22, 2024) (Sánchez, J.); No. CV 18-2689, ECF 246. The individual defendants then filed a post-trial motion under Rules 50 and 59, arguing they were entitled to judgment as a matter of law because the plaintiff's deliberate deception claims were barred by Heck. Dennis, 2024 WL 3904046, at *2. Judge Sánchez denied this motion, finding that the plaintiff's deliberate deception claims were not barred by Heck, as they were limited to his vacated 1992 conviction for first-degree murder and were not an attack on his later *nolo contendere* plea

(E.D. Pa. Mar. 20, 2026) (Henry, J.) (collecting cases) (on a Rule 12 motion, applying <u>Poventud</u>

in finding that the *pro se* plaintiff's due process claims for coercion and fabrication of evidence

concerned the fairness of the proceedings and did not impugn the validity of his second conviction,

---

to third-degree murder.  <u>Id.</u> at *3 (citing <u>Poventud</u>).  Judge Sánchez further found that the plaintiff's claims did not "require[] the jury to find facts that are inherently inconsistent with" his third-degree murder conviction and his conviction "was not based on any of the evidence" challenged in his deliberate deception claims.  <u>Id.</u> (internal quotations omitted).

Some of Judge Robreno's and Judge Sánchez's rulings are not consistent with Judge Jacobs' and Judge Livingston's dissents in <u>Poventud</u>, which I conclude are the correct views of these issues.  For example, Judge Sánchez seems to elevate deliberate deception claims to be analogous to <u>Brady</u> claims.  <u>See</u> <u>Dennis</u>, 2024 WL 3904046, at *2–3.  I believe <u>Brady</u> claims are more serious and rooted in the Constitution, whereas deliberate deception claims are simply tortious.  Moreover, although Judge Sánchez used the word "clean" to describe the record, I do not agree.  <u>See id.</u> at *3.  There is not a "clean" conviction when there is a later *nolo contendere* plea, as it does not take away the fact that a person was murdered.  <u>See id.</u>  Hypothetically, there could be an instance in which a plaintiff raises a <u>Brady</u> claim that does not "imply the invalidity" of an outstanding conviction, but that is not the case here.  <u>See</u> <u>Herrera</u>, 132 F.4th at 256; <u>Poventud</u>, 750 F.3d at 163 (Jacobs, J., dissenting).

<u>Dennis</u> is currently on appeal to the Third Circuit.  <u>See</u> <u>Dennis v. City of Phila.</u>, Nos.: 24-2596, 24-2670.  As of the filing of this opinion, briefs have been submitted, but oral argument has not yet been scheduled.

but the malicious prosecution and wrongful imprisonment claims were <u>Heck</u>-barred).[7]  However, I believe those decisions are not determinative of this case.[8]

I agree with Judge Jacobs' and Judge Livingston's dissents in <u>Poventud</u> and find that the facts of Plaintiff's case are different from <u>Poventud</u>, <u>Jackson</u>, and <u>Dennis</u>.  Plaintiff contends his initial conviction was vacated because of a <u>Brady</u> violation, and his later *nolo* plea was based on "a separate record unaffected by the misconduct at issue."  ECF 159 at 5–8; ECF 161 at 2–3.  But Plaintiff's initial conviction was vacated based on Detective Pitts' misconduct and alleged coercion of Fowler's statement (<u>see</u> City's SUMF, ¶¶ 2, 11), and in Plaintiff's *nolo* plea, the Court of Common Pleas relied on Mr. Fowler's statement that he saw Plaintiff shoot the victim (<u>see</u>

---

[7] <u>See</u> <u>also</u> <u>Gladden v. City of Philadelphia</u>, No. CV 21-4986, 2022 WL 605445, at *4–7 (E.D. Pa. Feb. 28, 2022) (Kearney, J.) (on a Rule 12 motion, applying Judge Robreno's analysis in <u>Dennis</u> to find that the plaintiff's fabrication of evidence and deliberate deception claims were not <u>Heck</u>-barred because the second conviction was a "clean conviction" and "entirely insulated" from the previous violations where the plaintiff knew of them when he pleaded no contest to third-degree murder, and therefore the claims "only bear[] on the conviction in which the violation occurred,"—*i.e.*, the invalidated conviction); <u>Carson v. City of Philadelphia</u>, No. CV 23-2661, 2024 WL 3792223, at *4–5 (E.D. Pa. Aug. 13, 2024) (Sánchez, J.) (on a Rule 12 motion, applying <u>Poventud</u> and <u>Dennis</u> in finding that the plaintiff's fabrication and withholding of evidence claims were not <u>Heck</u>-barred because they implicated only the vacated first conviction, the plaintiff pleaded guilty to the second conviction with "knowledge of the full body of evidence," and the plaintiff's ultimate guilt or innocence "has no bearing on the due process violations alleged"); <u>Natividad v. Raley</u>, No. CV 22-5061, 2025 WL 1550740, at *4–5 (E.D. Pa. May 30, 2025) (Pappert, J.) (on a Rule 56 motion, the fabrication of evidence and deliberate deception claims were not <u>Heck</u>-barred because the misconduct affecting the first conviction was "recognized and accounted for in the second conviction," the claims "are not necessarily inconsistent with [the plaintiff's] guilt," and the "fact that an error undermines confidence in the jury's verdict does not mean that a jury *could not* have found guilt beyond a reasonable doubt after the error was corrected"); <u>White v. City of Philadelphia</u>, No. CV 23-4538, 2025 WL 3706949, at *3 (E.D. Pa. Dec. 22, 2025) (Bartle, J.) (on a Rule 56 motion, the § 1983 action was not <u>Heck</u>-barred because it would undermine only the validity of his 1977 criminal conviction, which was vacated, and had nothing to do with his 2023 guilty plea, which was free from constitutional violations and was not predicated on his allegedly coerced confession or recanted witness testimony); <u>Maldonado v. City of Philadelphia</u>, No. CV 22-3474, 2023 WL 4685967, at *4–7 (E.D. Pa. July 21, 2023) (Murphy, J.) (on a Rule 12 motion, the plaintiff's § 1983 claim was not barred by <u>Heck</u>, as the complaint "raises the plausible inference that the evidence he complains of was not foundational to his second conviction" and discovery will determine "whether the evidence used for [plaintiff's] second conviction is the same as his first conviction"); <u>Bey v. Hediger</u>, No. CV 24-702, 2025 WL 2636424, at *4–7 (W.D. Pa. Sept. 12, 2025) (applying <u>Poventud</u> and <u>Dennis</u> to find that the § 1983 claims were not <u>Heck</u>-barred, because the "subsequent [guilty plea] conviction is a 'clean conviction' and 'entirely insulated' from the previous violations because [the plaintiff] knew of them when he pleaded [guilty] to third-degree murder").

[8] In the absence of any controlling precedent by the Supreme Court or the Third Circuit, I am adopting the analysis of Judge Jacobs and Judge Livingston and will therefore write in the first person.

21

City's SUMF, ¶¶ 17–18).  ECF 137 at 16; ECF 160 at 4–5.  Although Plaintiff's initial conviction was "declared invalid by a state court" as a result of the DAO's request, and his later plea occurred after the evidence was disclosed, Plaintiff's plea ***does not*** rest on "a separate record unaffected by the [Brady violation]."  See ECF 159 at 8 (citing Heck, 512 U.S. at 487).  As in Poventud, Plaintiff would need to prove that the "omitted impeachment material creates a reasonable doubt" as to whether he committed the crime (*i.e.*, Detective Pitts' misconduct records and alleged coercion of Fowler's statement), but to do this, Plaintiff must "impugn" the "veracity of his own [*nolo*] plea," in which he admitted to committing the crime, based on Fowler's statement that he saw Plaintiff shoot the victim.  City's SUMF, ¶¶ 2, 11, 17–18; Poventud, 750 F.3d at 169, 172 (Livingston, J., dissenting).  In other words, Plaintiff's *nolo* plea is based on the evidence challenged in his Brady claim, and a favorable judgment for Plaintiff would "necessarily imply" the invalidity of his outstanding conviction.[9]  See Herrera, 132 F.4th at 256; Poventud, 750 F.3d at 163 (Jacobs, J., dissenting).

Accordingly, Plaintiff's claim is Heck-barred.

---

[9] Here, the DAO conceded there was a Brady violation and recommended vacatur of Plaintiff's conviction, which Judge Giovanni O. Campbell of the Court of Common Pleas approved.  See City's SUMF, ¶¶ 11–12; Plaintiff's Response at 7; Plaintiff's SUMF at 7, ¶ 1; City's Response, ¶ 1.  Plaintiff later pleaded *nolo contendere* to third-degree murder, which is relevant, but does not get around Heck.  See City's SUMF, ¶¶ 16–18; Plaintiff's Response at 7.  But Plaintiff did not need to plead *nolo contendere* and could have proceeded with another trial, in which he would have been entitled to the presumption of innocence.

I conclude the fact that the DAO requested the state court to vacate Plaintiff's prior convention because of a Brady violation is not binding on this Court.  Furthermore, for the reasons stated in detail by Judge Jacobs and Judge Livingston, the failure to disclose evidence, although serious, does not necessarily require the resulting conviction to be invalidated.  Rather, as discussed below in Part X.B, for a Brady violation, such evidence also needs to be material.  Here, in Plaintiff's case, such evidence regarded a collateral issue, and Plaintiff has not shown that there was a constitutional violation with respect to his original conviction, notwithstanding the fact that this was the conclusion of the DAO and the Court of Common Pleas.

IX.    PARTIES' CONTENTIONS – MOTION FOR SUMMARY JUDGMENT –
       MONELL

   A.  **Defendant City of Philadelphia's Motion for Summary Judgment (ECF 137; ECF
       152; ECF 160)**

   The City argues that even if Plaintiff's claims are not Heck-barred, Plaintiff's Monell claim

fails for several reasons,[10] including that (1) Plaintiff has not shown a constitutional violation, (2)

Plaintiff has not shown an unconstitutional custom of the PPD, (3) Plaintiff has not shown that the

DAO had a custom of not requesting IA files from the PPD between 2011–2013, and (4) the City

is not liable for the DAO's hypothetical custom of refraining from requesting IA files.

   First, the City argues there was no constitutional violation for Plaintiff's Brady claim,[11] as

Plaintiff has not proven that any individual knowingly concealed evidence to create false testimony

---

[10] Defendant City also contends that Plaintiff improperly raises new Monell theories of liability at summary judgment
that were not initially pleaded in his Complaint, and Plaintiff never moved to amend his pleadings. See ECF 152 at
3–4 (citing Kocher v. Larksville Borough, 926 F. Supp. 2d 579, 604 (M.D. Pa. 2013); Rojo v. Deutsche Bank, 487 F.
App'x 586, 588–89 (2d Cir. 2012) (summary order); Young v. Suffolk Cty., 922 F. Supp. 2d 368, 395–96 (E.D.N.Y.
2013); Marchand v. Simonson, 16 F. Supp. 3d 97, 109 (D. Conn. 2014)); see also ECF 160 at 6.  The City argues
Plaintiff's initial Monell theory was that the City is liable for the DAO's policy of violating Brady by not producing
IA records to criminal defendants, but Plaintiff now asserts for the first time that the City, through the PPD, has a
policy of not affirmatively sending IA files to the DAO, which resulted in the non-disclosure of Pitts' IA files in his
criminal case.  ECF 152 at 3–5; ECF 160 at 5–6.  The City argues this is severely prejudicial because it did not have
the chance to move to dismiss the claim under Fed. R. Civ. P. 12, or test Plaintiff's claims or develop defenses through
fact discovery.  ECF 152 at 4; ECF 160 at 6.  The City further contends it is entitled to summary judgment because
permitting Plaintiff to proceed to trial would unfairly prejudice the City, risk confusing the jury, and deprive the Court
of a fully developed record upon which to base its rulings.  ECF 152 at 4.

The Court finds that Plaintiff properly pleaded both theories in his Complaint.  See ECF 1, ¶¶ 29–30 (alleging trial
prosecutor failed to produce requested IA records to him in discovery); id. ¶ 58 (alleging trial prosecutor's conduct
was pursuant to a DAO policy of not producing IA records), id. ¶ 70 (alleging actions were taken pursuant to the
practice and policies of the City as evidenced by the policy of the DAO); id. ¶ 71 (alleging actions were caused by the
failure of the City, with deliberate indifference, to properly train, control, or supervise); see also Benckini v. Hawk,
654 F. Supp. 2d 310, 316 n.1 (E.D. Pa. 2009) (Pratter, J.) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir.
2003)) (liberally construing *pro se* pleadings on summary judgment).  The Court addresses each theory below in Part
X.

[11] As the City points out, the precise nature of Plaintiff's due process claim is unclear—specifically, whether Plaintiff's
claim is rooted in Brady or a broader deliberate deception claim in violation of due process.  ECF 137 at 13 (citing
Dennis v. City of Phila., 19 F.4th 279, 291 (3d Cir. 2021)).  Plaintiff argues it is a Brady claim, based upon "the City's
longstanding failure to create and enforce a system for transmitting IA material from PPD to the DAO."  ECF 140 at
10.  For present purposes, this Court will assume Plaintiff's due process claim is rooted in Brady.

to secure his conviction. ECF 137 at 17–18. The City argues Plaintiff has not shown the DA knew about the Pitts IA materials or knowingly concealed them to create false testimony and secure his conviction. ECF 137 at 18; see also ECF 160 at 4–5. The City also contends that even if the evidence was suppressed, Plaintiff cannot prove that the evidence was material. ECF 137 at 18; see also ECF 160 at 4–5. The City contends the Pitts IA materials were unrelated to Plaintiff's case, and the other, unrelated evidence against Plaintiff was overwhelming. ECF 137 at 18; see also ECF 160 at 4–5. The City argues the DAO's concession that the evidence was material was based on the DAO's policy considerations and Detective Pitts' conduct in other cases, which came to light well after Plaintiff's conviction in 2013. ECF 137 at 18; see also ECF 160 at 4–5.

Second, the City contends Plaintiff has not shown an unconstitutional custom. Plaintiff argues the City (through the PPD) has a policy of not affirmatively sending IA files to the DAO, which resulted in the non-disclosure of Detective Pitts' IA files in his criminal case. ECF 152 at 4–5; ECF 160 at 7–8. But the City contends that Plaintiff has not established that the City's custom of producing IA files to the DAO upon request is unconstitutional. ECF 152 at 4–5; ECF 160 at 7–8. The City argues Plaintiff cites no law for the proposition that the City had a legal obligation to affirmatively transmit IA records to the DAO, and Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Phila., 267 A.3d 531 (Pa. Commw. Ct. 2021) confirms that the City is constitutionally correct when it provides IA files to the DAO upon request. ECF 152 at 4–5; see also ECF 160 at 7–8 (citing Kyles v. Whitley, 514 U.S. 419, 437 (1995)). The City further contends Plaintiff has not developed any evidence that the City withholds requested records or that

24

its mechanism of transmitting records to the DAO is faulty, or that any faulty record transmission caused the deprivation in his case.[12]  ECF 152 at 4–5; ECF 160 at 7–8.

Third, the City argues Plaintiff fails to show the DAO had a custom of not requesting IA files from the PPD between 2011 and 2013.  ECF 160 at 8–9.  The City contends that Plaintiff's reliance on Captain Drissel's testimony is misplaced, as Captain Drissel did not testify that the DAO requested no IA files between 2011 and 2013, but rather that the DAO requests more IA files today than it did during that time.  Id.; see also ECF 159 at 9, 11–12.  The City contends an increase in frequency does not establish the absence of a prior practice.  ECF 160 at 8–9.  The City argues that Plaintiff offers no evidence to support his contentions, as the Joint Stipulations of Fact in Commonwealth v. Onyiah, No. CP-51-CR-0001632-2011 (ECF 140, Exhibit D) ("Onyiah Joint Stipulations") address IA materials in a different criminal case and refer generally to the DAO's handling of sustained misconduct findings.  Id. at 9.  The City also contends the DAO's concession in this case addresses the nondisclosure of materials to the defense generally, and the DAO made no representations as to whether the DAO obtained those materials from the PPD.  Id.

Lastly, the City argues it cannot be liable for the DAO's alleged custom of not requesting IA records from the PPD.  ECF 137 at 18–21; ECF 152 at 2–3; ECF 160 at 9–10.  The City contends this alleged custom is prosecutorial, not administrative, because "[d]ecisions about what evidence to seek, review, and disclose in preparing for trial fall squarely within that prosecutorial function." ECF 160 at 9–10; see also ECF 137 at 18–21; ECF 152 at 2–3.  Thus, decisions "integral to the judicial phase of the criminal process," including the initiation and preparation of a prosecution, cannot give rise to municipal liability.  ECF 160 at 9 (citing Van de Kamp v. Goldstein, 555 U.S.

---

[12] For similar reasons, Defendant City argues that Plaintiff has failed to prove that the City was deliberately indifferent to criminal defendants' rights by making IA files available to the DAO upon request.  ECF 160 at 8.

335, 344–45 (2009); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430–31 (1976); <u>Carter v. City of Phila.</u>, 181 F.3d 339, 352–53 (3d Cir. 1999)); <u>see</u> <u>also</u> ECF 137 at 19–20.

**B.  Plaintiff's Response in Opposition (ECF 140; ECF 159; ECF 161)**

As to his <u>Monell</u> claims, Plaintiff contends there was an "administrative void," such that "the PPD maintained no policy or mechanism for proactively transmitting IA files to the DAO" and "the DAO operated under a 'non-request' policy expecting defense subpoenas for <u>Brady</u> material," despite "the City's awareness of obvious <u>Brady</u> disclosure risks."  ECF 140 at 2, 11; ECF 159 at 3–4, 9–12; ECF 161 at 5.  Plaintiff argues "this structural gap prevented records of sustained misconduct by former homicide detectives James Pitts and Ronald Dove from reaching the prosecutor in plaintiff's case."  ECF 159 at 4 n.4.

Plaintiff also argues the City had a "non-transmission" custom, where "the City ensured that no IA files would reach homicide prosecutors absent a request that never came."  ECF 140 at 12–13; ECF 159 at 9–11; ECF 161 at 5–8.  Plaintiff argues the PPD's policy of being a "passive repository" and only transmitting the files to the DAO "upon request" caused the <u>Brady</u> violations. ECF 159 at 3, 9–11; ECF 161 at 5–8.  Plaintiff points to Captain Drissel's testimony that the City transmitted IA files only "upon request," and that, compared to today, such requests were "less frequent" in 2011–2013, as evidence of this custom.  ECF 159 at 9–11; ECF 161 at 6–8; <u>see also</u> ECF 159-1, Tr. of Captain Drissel's 30(b)(6) Deposition ("Drissel Deposition"), at 21:1–10 ("[W]e are a repository, and upon request that information is provided.").  Plaintiff contends that "Pitts' 2002-2013 IA records were never transmitted to [the] homicide prosecutors handling Plaintiff's case," causing the <u>Brady</u> violations. ECF 161 at 7.  Plaintiff argues this "confirms the City adopted a practice ensuring that crucial disciplinary records would remain unseen unless prosecutors affirmatively asked for them—an obvious <u>Brady</u> risk."  ECF 159 at 9.

Plaintiff further contends the prior DAO had a "non-request" custom, where the DAO had a policy of not requesting IA files from the PPD between 2011 and 2013. ECF 140 at 2, 4, 13; ECF 159 at 4, 9–11, 13; ECF 161 at 5–8. Plaintiff points to Captain Drissel's testimony that such requests were "less frequent" in 2011–2013 to argue the DAO "rarely requested" such files. ECF 159 at 4, 10–11 (citing Drissel Deposition, at 27:2–3, 27:5–6, 39:16–18). Plaintiff contends "the City knew requests were rare yet took no step to mitigate the disclosure gap." Id. at 9. Plaintiff argues the DAO's "administrative failure to request misconduct records" provides municipal liability under Monell because the DAO acts as a policymaker in administrative (non-prosecutorial) matters. ECF 140 at 4, 12–13; ECF 159 at 11–12. Plaintiff provides the NYU Zimroth Report (ECF 140, Exhibit A), the Quattrone Center's Hidden Hazards Report (ECF 140, Exhibit B), and the Onyiah Joint Stipulations (ECF 140, Exhibit D) as evidence of this custom. ECF 140 at 2, 5; ECF 161 at 6, 8.

Moreover, Plaintiff argues this "administrative void" reveals "deliberate indifference." ECF 140 at 12–13; ECF 159 at 10–12; ECF 161 at 5–6. Plaintiff contends the City "knew these conditions coexisted yet failed to act," and "the resulting violations were not accidental but the predictable outcome of deliberate indifference." ECF 159 at 11 (citing Connick v. Thompson, 563 U.S. 51, 62 (2011); Carter, 181 F.3d at 357). Plaintiff argues "[t]hese policies were not unique to Plaintiff's case but operated across all prosecutions during the relevant period." Id. Plaintiff provides Captain Drissel's testimony that "the repository-only practice applied to 'every officer … even the commissioner,'" and that "requests from prosecutors were generally 'less frequent' during the relevant period" as evidence of deliberate indifference. Id. at 11 n.6 (citing Drissel Deposition, at 30:18–20, 49:9). Plaintiff contends "[t]hese admissions suggest that the same disclosure gap may have affected hundreds, if not thousands, of other prosecutions during the

2011–2013 timeframe and constitute a systemic failure presenting identical <u>Monell</u> claims for all defendant [sic] deprived of PPD IA records." <u>Id.</u> Plaintiff further references the NYU Zimroth Report (ECF 140, Exhibit A), the Quattrone Center's Hidden Hazards Report (ECF 140, Exhibit B), and the Onyiah Joint Stipulations (ECF 140, Exhibit D) as evidence of deliberate indifference. ECF 140 at 2; ECF 159 at 4 n.3; ECF 161 at 6, 8.

## X.   DISCUSSION – MOTION FOR SUMMARY JUDGMENT – <u>MONELL</u>

### A. <u>Monell</u> Standard

For a § 1983 <u>Monell</u> claim against a municipality, "[a] plaintiff may put forth that an unconstitutional policy or custom of the municipality led to his or her injuries, or that they were caused by a failure or inadequacy by the municipality that reflects a deliberate or conscious choice[.]" <u>Forrest v. Parry</u>, 930 F.3d 93, 105 (3d Cir. 2019) (internal quotations and citations omitted).[13] For a municipal policy or custom theory, the plaintiff must show (1) a deprivation of a federal right, <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799 (1986); (2) a relevant policy or custom attributable to the City, <u>Monell v. Dep't of Soc. Servs. of City of New York</u>, 436 U.S. 658, 691 (1978); and (3) "a direct causal link between the municipal action and the deprivation of [the] federal [right,]" <u>Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 404 (1997). The municipality is liable when either the policy or custom facially violates the Constitution, or if not unconstitutional itself, is the "moving force" behind the constitutional violation. <u>Thomas v. Cumberland Cnty.</u>, 749 F.3d 217, 222 (3d Cir. 2014).

On the other hand, for a failure or inadequacy theory, a plaintiff has the "separate, but equally demanding requirement of demonstrating a failure or inadequacy amounting to deliberate

---

[13] Plaintiff's briefing is unclear, but Plaintiff seems to be proceeding under both a municipal policy or custom theory and a deliberate indifference theory. Accordingly, the Court will analyze the City's Motion under both theories.

indifference on the part of the municipality." Forrest, 930 F.3d at 106.  A plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights."  Est. of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (quoting Carter, 181 F.3d at 357).

### B. Plaintiff Has Not Shown A Constitutional Violation Under Brady v. Maryland

Plaintiff alleges his due process rights were violated because Detective Pitts' IA records were improperly withheld from him in violation of Brady, and that those records were material to his criminal case, as they could have impeached Detective Pitts' testimony relaying Mr. Fowler's eyewitness statement.  See ECF 140 at 2; ECF 159 at 11; ECF 161 at 5.  In Brady v. Maryland, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court extended Brady to specifically include evidence that impacts the credibility of a witness.  The duty of disclosure is not limited to evidence the prosecutor is aware of but also includes "evidence known only to police investigators and not to the prosecutor."  Kyles, 514 U.S. at 438.  Thus, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police."  Id. at 437.

The Third Circuit has consistently followed Brady and Giglio in § 1983 cases alleging violations of due process.  See, e.g., Smith v. Holtz, 210 F.3d 186 (3d Cir. 2000); Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, 411 F.3d 427, 443 (3d Cir. 2005), overruled on other grounds by Dique v. N.J. State Police, 603 F.3d 181 (3d Cir. 2010);

Telzer v. Borough of Englewood Cliffs, 783 F. App'x 253, 258 (3d Cir. 2019) (nonprecedential); see also Dennis v. City of Phila., 19 F.4th 279 (3d Cir. 2021) (distinguishing Brady § 1983 claims from deliberate deception § 1983 claims).

However, the Third Circuit has emphasized that there is a need to determine whether the impeachment evidence is truly exculpatory, and that such evidence also needs to be material. For example, the Third Circuit has explained that the failure to disclose evidence does not automatically violate due process unless the plaintiff establishes the "materiality" of the withheld evidence. See Buehl v. Vaughn, 166 F.3d 163, 181 (3d Cir. 1999) (citing Kyles, 514 U.S. at 434); Smith, 210 F.3d at 196. A prosecutor's failure to disclose is material "only if there is a reasonable probability that the jury would have returned a different verdict if the information had been disclosed, or, stated differently, if 'the Government's evidentiary suppression undermines confidence in the outcome of the trial.'" Buehl, 166 F.3d at 181 (citing Kyles, 514 U.S. at 434). Thus, "[t]he question is not whether the defendant would more likely than not have received a different verdict with the [concealed] evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Smith, 210 F.3d at 196 (citing Kyles, 514 U.S. at 434) (alteration in original).

Here, Plaintiff points to the Commonwealth's March 29, 2023, concession in the PCRA Answer (see City's SUMF, ¶ 11; ECF 140, Exhibit E, at 47–55), as evidence of a Brady violation in his criminal trial and that those records were material. ECF 140 at 9–10; ECF 159 at 6–8; ECF 161 at 2.

The City argues, however, that Plaintiff has not proven that any individual knowingly concealed evidence to create false testimony to secure his conviction, and even if the evidence was suppressed, Plaintiff cannot prove that such evidence was material to his conviction. ECF 137 at

17–18; ECF 137, Exhibit 5, at 39–55; see also ECF 160 at 4–5; City's SUMF, ¶ 11.  The City contends the Pitts IA materials were unrelated to Plaintiff's case, and the other evidence against Plaintiff was overwhelming.  ECF 137 at 18; ECF 137, Exhibit 5, at 39–55; ECF 160 at 4–5; City's SUMF, ¶ 11.

The Court agrees with the City that Plaintiff has not shown that there was a Brady violation at his trial.  City's SUMF, ¶ 11; ECF 137 at 17–18; ECF 160 at 4–5; see also ECF 137, Exhibit 5, at 39–55; ECF 140, Exhibit E, at 47–55.  Even under a most favorable interpretation of the facts presented, Plaintiff cannot identify a genuine issue of fact that the Pitts IA records withheld conclusively would have generated a different verdict or that the alleged suppression demonstrably undermines confidence in the disposition of his trial.  See Buehl, 166 F.3d at 181; Smith, 210 F.3d at 196.  The Court notes the City has a decent argument that Detective Pitts' involvement in Plaintiff's criminal trial was very fragmentary and not material.  ECF 137 at 18; ECF 160 at 4–5; City's SUMF, ¶ 3.  Detective Pitts' involvement with Plaintiff's criminal case was limited to taking a statement from William Fowler (who stated that he saw Plaintiff shoot the victim), along with Detective Keen and testifying to the contents of that statement.  ECF 137 at 18; ECF 160 at 4–5; City's SUMF, ¶¶ 3, 11.  At most, the IA records would be impeaching as to Detective Pitts and potentially impeaching as to Mr. Fowler.  ECF 160 at 4–5; City's SUMF, ¶ 5.  But there was other substantial evidence tying Plaintiff to the crime, including written statements from Mr. Graham and Lalana Brown; video, ballistics, and cell phone evidence; and "the untainted statement of Mr. Graham that when he asked Plaintiff about the victim, Plaintiff laughed and replied, 'he's done, it's over, finito.'"  ECF 137 at 18; ECF 160 at 4–5; City's SUMF, ¶ 11.

In the PCRA Answer, the Commonwealth, through the DAO, conceded that the withheld records were material for Brady purposes.  See ECF 137, Exhibit 5, at 55; ECF 140, Exhibit E, at

47–55. But this Court believes that such records are collateral to Plaintiff's prosecution. The suppressed Pitts records relate to three isolated incidents and subsequent IAD investigations that resulted in "sustained" findings of misconduct. See ECF 137, Exhibit 5, at 33–39; ECF 140, Exhibit E, at 33–39. Indeed, none of the IA records pertain to Detective Pitts' conduct in Plaintiff's criminal case. See ECF 137, Exhibit 5, at 33–39; ECF 140, Exhibit E, at 33–39.

Specifically, "[o]ne of the IAD investigations concerned an alleged off-duty domestic assault by Pitts in 2002, and the others concerned reported abuses of authority during homicide investigations in 2012 and 2013." See ECF 137, Exhibit 5, at 33; ECF 140, Exhibit E, at 33. As such, by Plaintiff's 2013 trial, "Detective Pitts had a history of two sustained IAD findings of misconduct from the 2002 and 2012 investigations." See ECF 137, Exhibit 5, at 33; ECF 140, Exhibit E, at 33. And the third IAD investigation "stemmed from an incident that was alleged to have occurred several weeks before" Plaintiff's trial and "did not result in an IAD determination sustaining a finding of misconduct" until after Plaintiff's trial. See ECF 137, Exhibit 5, at 33; ECF 140, Exhibit E, at 33.

In Plaintiff's PCRA proceedings, the DAO "placed special emphasis on William Fowler's statement that he saw Plaintiff shoot the victim because [the statement] had been taken by Detective Pitts and was introduced through his testimony." See City's SUMF, ¶ 11. Thus, the DAO "'lacked confidence' in the integrity of convictions that rest 'in large part' on his testimony." See id. But, as the City noted—and this Court agrees—the DAO's concession that the evidence was material was likely based on policy considerations and Detective Pitts' conduct in other cases, which came to light after Plaintiff's conviction. ECF 137 at 18.

Accordingly, Plaintiff has not shown that the Pitts records were material such that prejudice resulted from suppression. See Dennis v. Sec'y, Pennsylvania Dep't of Corr., 834 F.3d 263, 284–

85 (3d Cir. 2016); ECF 137 at 18; ECF 160 at 4–5.  Plaintiff has not shown that there would be a reasonable probability of a different result in Plaintiff's criminal trial if the evidence was disclosed, considering that the Pitts records are collateral to Plaintiff's case, as well as the other substantial evidence that tied Plaintiff to the crime.  See City's SUMF, ¶ 11; Kyles, 514 U.S. at 434 (citing United States v. Bagley, 473 U.S. 667, 678 (1985)).  Therefore, the Court will **GRANT** the City's Motion for Summary Judgment (ECF 137) because Plaintiff has not shown a constitutional violation, specifically a Brady or Giglio violation at his trial.  See Buehl, 166 F.3d at 181.  In other words, Plaintiff has not shown that exculpatory evidence was deliberately suppressed in his case, and that such evidence was material to his conviction.  See Smith, 210 F.3d at 196.

### C. Plaintiff Has Not Shown An Unconstitutional Custom for Monell Liability

Plaintiff argues that the City had an unconstitutional custom of not affirmatively transmitting IA files to the DAO and only making such files available upon request.[14]  ECF 140 at 12–13; ECF 159 at 9–11; ECF 161 at 5–8.  A "custom" is a practice that is "so permanent and well-settled as to virtually constitute law."  Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotations omitted).  Custom requires proof of knowledge and acquiescence by a decisionmaker with the power to make policy.  McTernan v. City of York, 564 F.3d 636, 658 (3d Cir. 2009); see also Est. of Roman, 914 F.3d at 798 (custom can be shown by demonstrating that the City "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiff's] injury").  "This does not mean, however, that the responsible decisionmaker must be specifically identified by the

---

[14] Plaintiff also argues the DAO had a custom of not requesting IA files from the PPD between 2011 and 2013.  ECF 140 at 2, 12–13; ECF 159 at 11–12.  The Court agrees with the City that this alleged custom is prosecutorial in nature, not administrative, and thus cannot give rise to municipal liability under Monell.  See Van de Kamp, 555 U.S. at 344–45; Imbler, 424 U.S. at 430–31; Carter, 181 F.3d at 352–53.

plaintiff's evidence. Practices so permanent and well settled as to have the force of law [are] ascribable to municipal decisionmakers." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (citation modified).

The City contends that Plaintiff has not established that the City's custom of producing IA files to the DAO upon request is unconstitutional. ECF 152 at 4–5; ECF 160 at 7–8. The City argues it did not have a legal obligation to affirmatively transmit IA records to the DAO because Fraternal Ord. of Police Lodge No. 5 by McNesby v. City of Phila., 267 A.3d 531, 544 (Pa. Commw. Ct. 2021), confirms that the City is constitutionally correct when it provides IA files to the DAO upon request. ECF 152 at 4–5; see also ECF 160 at 7–8 (citing Kyles, 514 U.S. at 437).

Plaintiff argues Fraternal Ord. of Police confirms that the City has "a derivative duty to assist the DAO" in fulfilling its Brady obligations and "illustrates why a 'wait for a subpoena' process is deficient." ECF 140 at 12. Plaintiff contends that "if the City does not affirmatively transmit misconduct records to the DAO, it frustrates the DAO's ability to meet its obligations to criminal defendants," thus leading to the "due process violations at issue here."[15] Id.

In Fraternal Ord. of Police, the plaintiffs sued for injunctive and declaratory relief regarding DA Krasner's creation of a "Do Not Call List" for police officers with documented misconduct in their personnel files. 267 A.3d at 535. The trial court granted preliminary objections and dismissed the complaint. Id. at 535–36. On appeal, the Pennsylvania Commonwealth Court held the trial court properly dismissed the complaint "to the extent it seeks to enjoin the City from providing information from officers' personnel files to DA Krasner, and to enjoin DA Krasner

---

[15] Plaintiff then contradicts himself in his Supplemental Brief in Response by arguing that Fraternal Ord. of Police is dicta from the Pennsylvania Commonwealth Court but separately aims to use Fraternal Ord. of Police to support his theory that the City has an affirmative duty to assist the DAO with Brady compliance, and the "upon request only" policy created the constitutional violation. See ECF 161 at 7–8.

from creating and maintaining an internal Do Not Call List, or from disclosing potentially exculpatory or impeachment information to criminal defense counsel," as those actions were fully within DA Krasner's discretion and he is "authorized under Brady and Giglio to engage in … the conduct alleged in the complaint." Id. at 543–44.[16]

The Commonwealth Court noted in dicta that "the District Attorney has an *affirmative duty* to disclose potentially exculpatory evidence, as well as evidence that could be used to impeach prosecution witnesses, whether that evidence is in the possession of the Office of the District Attorney or the City itself and must provide that evidence to the accused." Id. at 544 (emphasis added). The Court further explained "the City has a *derivative duty* to assist the District Attorney with fulfilling his constitutional obligation to criminal defendants, by providing the District Attorney, *at his request*, with information regarding such allegations." Id. (emphasis added).

This is exactly what is established here: under Fraternal Ord. of Police, the City does not have a legal obligation to *affirmatively* transmit IA records to the DAO. See id. at 544; ECF 140 at 8–9, 12 (Plaintiff's Opposition); ECF 160 at 7–8 (City's Supplemental Response); ECF 161 at 7–8 (Plaintiff's Response to City's Supplemental Response). Instead, the City has a derivative duty of producing IA files to the DAO upon request. Fraternal Ord. of Police, 267 A.3d at 544; Drissel Deposition, at 21:1-5, 23:20–24:2. Just because the requests were less frequent from 2011–2013 does not mean that there were no requests, or that the City ignored such requests. Drissel Deposition, at 26:3-17; ECF 160 at 8–9 (City's Supplemental Response). Moreover, Supreme Court precedent, see, e.g., Kyles, 514 U.S. at 437, establishes that Brady places the disclosure obligation on the prosecution, not the police. Although this Court implied in comments to counsel

---

[16] The Commonwealth Court separately addressed the officers' procedural due process claims as to being placed on the "Do Not Call" list in the first place. See Fraternal Ord. of Police, 267 A.3d at 545, 549–50.

at a hearing that the City should likely be doing more in terms of transmitting exculpatory evidence, at the end of the day, the City's current process of being a repository and producing records "upon request" is not unconstitutional. ECF 152 at 4–5 (City's Reply); ECF 161 at 7–8 (Plaintiff's Response to City's Supplemental Response). In fact, if such process was unconstitutional, then the Commonwealth Court would not have upheld this process in Fraternal Ord. of Police. See 267 A.3d at 544; ECF 152 at 4–5 (City's Reply); ECF 161 at 7–8 (Plaintiff's Response to City's Supplemental Response).

Accordingly, as Plaintiff has not shown an unconstitutional custom, the Court will **GRANT** the City's Motion for Summary Judgment (ECF 137).[17]

### D. Plaintiff Has Not Shown Deliberate Indifference for Monell Liability

Plaintiff also raises a § 1983 claim against the City based on a failure to train, control, or supervise, resulting in deliberate indifference. See ECF 1, ¶ 71 ("The actions of the individual defendants were caused by the failure of the City of Philadelphia, with deliberate indifference, to properly train, control or supervise the individual defendants with respect to their powers under the Constitution and laws of the United States."); ECF 140 at 12–13; ECF 159 at 10, 12 (the "administrative void" reveals deliberate indifference and "[t]hese policies were not unique to Plaintiff's case but operated across all prosecutions during the relevant period"); ECF 159 at 11 (the City "knew these conditions coexisted yet failed to act," and "the resulting violations were not accidental but the predictable outcome of deliberate indifference"); ECF 161 at 4. Plaintiff also provides the Zimroth Report (ECF 140, Exhibit A), the Quattrone Center's Report (ECF 140,

---

[17] As Plaintiff has not shown a constitutional violation in his case, see Part X.B, the Court also finds that Plaintiff has not shown that the alleged unconstitutional custom was the "proximate cause" of his injuries, see Est. of Roman, 914 F.3d at 798, or that the City's policy was the "moving force" behind the constitutional violation, see Thomas, 749 F.3d at 222.

Exhibit B), and the Onyiah Joint Stipulations (ECF 140, Exhibit D) as evidence that this "administrative void" led to deliberate indifference. See ECF 140 at 2; ECF 159 at 4 n.3; ECF 161 at 6, 8.[18]

A Monell claim predicated on failure to train, supervise, or discipline must establish that the municipality's failure "amounts to [a] deliberate indifference [as] to the rights of persons with whom ... employees will come into contact." Johnson v. City of Phila., 975 F.3d 394, 403 (3d Cir. 2020) (citation modified). A plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Est. of Roman, 914 F.3d at 798 (quoting Carter, 181 F.3d at 357); see also Forrest, 930 F.3d at 106.

The Court finds that Plaintiff has not established any of the elements required to prove a deliberate indifference claim under Monell. Plaintiff has not shown evidence beyond mere conjecture that "[t]hese policies were not unique to Plaintiff's case but operated across all prosecutions during the relevant period." See ECF 159 at 11. And even if there was a lack of IA requests during 2011–2013, Plaintiff has not specifically shown that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Est. of Roman, 914 F.3d at 798. Accordingly, the Court will **GRANT** the City's Motion for Summary Judgment (ECF 137).

---

[18] This Court notes that although the City states in a single sentence that "Plaintiff has failed to adduce any evidence that the City was deliberately indifferent to criminal defendants' rights by making IA files available to the DAO upon request" in its supplemental briefing (see ECF 160 at 8), overall, the Parties did not provide fulsome briefing on this issue.

37

## XI.    CONCLUSION

An appropriate order follows.

\\adu.dcn\paed\PHL-DATA\Judge_Baylson\CIVIL 24\24-1019 Brown v City\24-1019, MSJ Memo Final.docx